Central Trust Company, Trustee in Bankruptcy. American Sample & Printing Company, Appellee, v. John M. Smyth Merchandise Company, Appellant.

## Gen. No. 26,071.

1. MUNICIPAL COURT OF CHICAGO—*sufficiency of statement of claim in action on contract.* A statement of claim in an action on a contract need not set forth plaintiff's evidence as to damages, nor set forth the specific and separate elements claimed as going to make up the damages. It is sufficient if such statement clearly sets forth the contract claimed to exist, its breach and that damages resulted.

2. CONTRACTS—*effect of omission of one party to sign.* The rule that a contract may be so drawn as to contemplate the signature of both parties, and be signed by only one of them and nevertheless

be binding on the other if the latter assents to its terms orally and proceeds to act upon it, applied under the particular facts of the action upon the contract in question, where after the contract had been signed by plaintiff and handed to defendant for signature, the latter did not sign, but said the terms were satisfactory, and told plaintiff to go ahead.

3. CONTRACTS—*when evidence sufficient to support finding of assent to and acts under contract.* In an action on a contract in a finding that defendant assented to the terms of the contract as submitted by plaintiff, and that in receiving and paying for certain of the work, at the contract price, defendant had acted on the contract, which was signed by plaintiff but not by defendant, the finding *held* not to have been against the manifest weight of the evidence.

4. CONTRACTS—*when statute of frauds not defense in action for breach.* In an action on a contract for the manufacture of certain articles, *held* that the contract involved was capable of being performed within a year and that the statute of frauds was, therefore, inapplicable.

5. CONTRACTS—*measure of damages in action for breach by refusal to accept article contracted for.* Where a party has contracted with another to manufacture certain articles, and the other repudiates the contract and refuses to accept the articles, and suit is brought against the latter for the breach, the damages are necessarily considered to be the amount that might have been realized had the contract been carried to completion.

6. CONTRACTS—*when prima facie case established in action for breach.* Where certain color chips had been made up for the full quantity of 50,000 catalogues in question, at a fixed rate per thousand, pursuant to an agreement testified to by plaintiff, and the testimony showed that after 10,000 catalogues ordered had been supplied with chips and had been bound and delivered, the balance were worthless for any other purpose and that as to such 40,000 not taken and not made up, plaintiff had not been called on to paste the chips onto the pages of the catalogues or to bind the pages into the covers or to inspect them, and consequently in its evidence as to damages plaintiff took the contract price and deducted the costs of the said three operations, figuring those costs on the basis that was used in fixing the price per 1000 chips, a prima facie case was made out as to plaintiff's damages.

7. CONTRACTS—*when burden on defendant contesting amount of plaintiff's loss in action for breach.* Where plaintiff in an action for breach of contract had manufactured all the material called for by the contract, and the only items remaining to be done under the contract were the certain items of service or labor incident to

pasting, binding and inspecting the materials already manufactured for defendant, and defendant claimed that at the time of the breach of the contract it would have cost plaintiff more to complete the three items of labor referred to than plaintiff had estimated would be the cost, it was incumbent on defendant to show it.

8. CONTRACTS—*when evidence as to custom properly excluded in action for breach.* Where, in explanation of the fact that defendant, in an action for breach of contract for refusal to accept part of materials ordered, had caused a printer to deliver 50,000 catalogue covers to plaintiff, defendant offered to prove that it was the custom of the printing trade to store, with the concern which was doing the work, stock which was to be used, beyond the immediate requirements of the particular job, and that this custom was known to plaintiff, it was not error to sustain objections to such evidence, as it did not appear that the work which plaintiff was doing was work comprehended within the term "printing trade," nor that the covers would be considered as "stock."

Appeal from the Municipal Court of Chicago; the Hon. HOWARD W. HAYES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Affirmed. Opinion filed November 2, 1921. *Certiorari* denied by Supreme Court (making opinion final).

MCCULLOCH, MCCULLOCH & DUNBAR, for appellant; WEIGHTSTILL WOODS, of counsel.

JONES, ADDINGTON, AMES & SEIBOLD, for appellee; A. F. MECKLENBURGER, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant, John M. Smyth Merchandise Company seeks to reverse a judgment for $1,272.36, recovered in the municipal court of Chicago, by the plaintiff, American Sample and Printing Company, a corporation. Since the appeal was perfected in this court, the plaintiff's assets have passed to the Central Trust Company, as trustee in its bankruptcy estate, and said trustee has, on motion duly made in this court, been substituted as the appellee herein.

Among other things, the defendant company dealt

350    Appellate Courts of Illinois.

Central Trust Co. v. John M. Smyth Mer. Co., 222 Ill. App. 347.

in paints, in selling which, it issued a paint catalogue from time to time. The various paints thus offered for sale were illustrated as to color and finish in this catalogue, by means of what are referred to in the record as "paint chips," which were pasted on the various pages of the catalogues at the proper places. The plaintiff was in the business of manufacturing these chips, pasting them in place and binding the catalogues. By its statement of claim the plaintiff alleged that the parties hereto had entered into a contract by the terms of which the plaintiff agreed to manufacture 50,000 paint catalogues containing 166 chips each, the chips to be mounted on printed catalogue pages and the pages bound in covers to be furnished by the defendant, for all of which work and material to be so performed and furnished by the plaintiff, the defendant agreed to pay at the rate of 29½ cents per thousand chips; that it was mutually understood that invoices were to be rendered at the time of each delivery and that deliveries were to be made from time to time in lots of 10,000 catalogues upon defendant's request. It was further alleged that, pursuant to the terms of that contract, the plaintiff made up all the paint chips required for the 50,000 catalogues and did all the other work required to be performed by it under the terms of the contract; that, at defendant's request, the plaintiff mounted the chips and bound the pages for 10,000 catalogues, which had been delivered by the plaintiff and paid for by the defendant, in accordance with the terms of the contract. It is further alleged that thereafter the defendant repudiated the contract and refused to accept the balance of the paint chips, to the plaintiff's damage in the sum of $1,750.

By its affidavit of merits the defendant admitted that it had furnished certain covers and printed matter to plaintiff and requested the plaintiff to mount and

bind chips into 10,000 catalogues and no more; that these had been received and paid for but it denied the making of any contract as alleged by the plaintiff or that the latter had done any work beyond that called for in connection with said 10,000 catalogues and set up the statute of frauds.

For the plaintiff, one Kaufman testified that he was the general office man for plaintiff, at the time in question, but was in other employment at the 'time he testified; that he talked with one Stejskal, who was employed by defendant as purchasing agent, and the latter told him defendant was about ready to place an order for 50,000 color chips of each of about 166 different kinds for mounting in its catalogues and that if plaintiff wished to submit figures, it would have to be done quickly as he would need the prices the following morning; that the witness made up some fig.. ures and submitted them to one Weinberg, president and manager of the plaintiff, and that they then went to defendant's place of business together and talked with Stejskal and submitted their figures; that they handed the latter a written statement addressed to the defendant and signed by the plaintiff. This statement was received in evidence. It quoted a price of 29½ cents per thousand chips for mounting and making the chips in 50,000 catalogues and binding the catalogues, the defendant to furnish all the printed sheets. The last paragraph of the statement or letter read: ''If all of the above is satisfactory, kindly sign and return the enclosed copy to us, retaining the original for your records.'' The witness testified further that Stejskal looked at the letter and said the price was all right and that plaintiff could go ahead and get out 50,000 of them; that he inquired of Stejskal if 50,000 were to be gotten out at the same time, explaining that the bid was prepared and submitted on that basis and that he said ''Yes. We use 50,000 but we only deliver you the catalogue inserts for 10,000 because the prices (of the

paints advertised) are liable to change''; that after Stejskal had told them to go ahead, he directed them to one Greenhouse who would furnish them the colors for the chips and also told them he would forward plaintiff the written order duly signed by the defendant, later, but that this was never done. In due time, some printing concern delivered to plaintiff the inserts for 10,000 catalogues and covers for 50,000 catalogues. The witness further testified that the color chips for the 50,000 catalogues were all prepared and that the chips for the 10,000 catalogues were duly mounted and the catalogues were bound and delivered to the defendant and paid for by it and that later plaintiff was advised by Stejskal that the defendant was to liquidate and would require no more chips to be mounted up; that the witness told him plaintiff had the chips all prepared and he directed that a bill be made out for what had been done and submitted to the defendant; that plaintiff submitted a bill for $1,272.36, which amount was arrived at by taking the contract price for the chips for the balance of 40,000 catalogues not ordered made up and deducting the cost of pasting, binding and inspecting, which work the plaintiff had not done because the catalogues had not been ordered, those costs being figured at the same rates on which the original estimate or bid had been based. Following the submission of this bill, the witness testified there had been a conference between the parties at which there was some discussion as to the correctness of the allowances plaintiff had made for the work not done and also the defendant contended that only 10,000 catalogues had been ordered, whereas the plaintiff took the position that the contract covered the work required for 50,000 catalogues.

Weinberg testified that when he and Kaufman submitted their written proposal or contract to Stejskal, the latter ''told us the order was ours; we should go ahead and prepare the color cards,—color chips for the

50,000 catalogues; that the order would be placed for the full amount, a written order,—a regular requisition on their stationery would be mailed to us in a day or so; but in order to save time, we should go ahead with the preparation for this work; that the order would be delivered in quantities of 10,000 or more at different times," as prices were likely to change, "and they were not confident they could sell the paint all through the season at the same price." He further testified that he told Stejskal that their price of 29½ cents per thousand chips was possible only on the basis of an order for a quantity sufficient to supply the full number of 50,000 catalogues and that he said, "All right, go ahead"; that he referred them to Greenhouse and the latter assured them the defendant would need 50,000 catalogues and that if Stejskal had said to go ahead it was perfectly safe to do so; that Greenhouse furnished the colors to be matched and they went ahead and prepared the color chips for 50,000 catalogues. He also testified to the delivery of 50,000 catalogue covers and sheets for 10,000 catalogues to the plaintiff, the latter of which were supplied with chips and bound and delivered to defendant and paid for; that defendant declined to order more catalogues made up; that their chips were useless for any other purpose and that plaintiff's claim had been made "on the basis of the original estimate."

For the defendant, Stejskal and Greenhouse testified in denial of conversations about which the plaintiff's witnesses had testified. On cross-examination, Stejskal admitted he told Weinberg that the defendant would use for the year "no less than * * * we used last year," which was 50,000, and that Weinberg had submitted his price per thousand chips on that basis. The jury returned a verdict for the plaintiff and judgment was entered accordingly.

The statement of claim set forth a good cause of

action. It was not required that the plaintiff plead his evidence as to damages, or set forth the specific and separate elements claimed as going to make up the damages. The statement clearly sets forth the contract claimed to exist, its breach and that damages resulted.

In support of its appeal the defendant contends that the contract declared upon by the plaintiff is shown not to exist for the writing submitted by the plaintiff to the defendant is a document drawn for signature by both parties and that such a document is not binding on either until both have signed it in the manner therein provided, citing *Waggeman v. Bracken,* 52 Ill. 468. That is not a correct statement of the law. A contract may be so drawn as to contemplate the signature of both parties, and be signed by only one of them and nevertheless be binding on the other if the latter assents to its terms orally and proceeds to act upon it. In the case cited, Bracken prepared a formal agreement or contract and signed it and delivered it to Waggeman, "who took it and made numerous and material alterations in it," but never signed it. The court held that "under this evidence," the trial court had not erred in refusing to let the agreement go to the jury. That is far from the situation in the case at bar. Here there was evidence to the effect that when the writing embodying the terms of the agreement, signed by one party, was handed to the other, whose signature was requested, the latter said the terms were satisfactory and told the plaintiff to go ahead. "Under this evidence," the trial court properly admitted the writing in evidence and in our opinion the jury were warranted in finding that there was a binding contract between the parties as set forth in that writing. The case of *Clark v. Potts,* 255 Ill. 183, involved an executory contract for the sale of land and the court said the law is well settled in this State that to constitute such a valid contract both parties

must be bound, "and while it is not necessary that the contract be signed by both parties, the assent of the parties to the contract must be expressed by some overt act * * *. In other words, it must appear that the contract has been accepted and adopted as his own by the party to whom an offer of sale has been made, before the obligations of the contract will become mutual and binding upon the parties; *Sutherland v. Parkins*, 75 Ill. 338; *Waggeman v. Bracken*, 52 Ill. 468; *Vogel v. Pekoc*, 157 Ill. 339; *Sellers v. Greer*, 172 Ill. 549." In the two cases last cited it appeared that the written contracts involved had not been signed by one of the parties involved and it was urged that the contracts had therefore never become binding on them but the Supreme Court said that "the acceptance of the contract by the parties of the first part, and holding it and acting upon it as a valid instrument, may be regarded as equivalent to its formal execution on their part" (*Vogel v. Pekoc, supra*), and that "the acceptance of the contract by appellee assenting to its terms, holding it and acting upon it as a valid instrument, may be regarded as equivalent to its formal execution on his part" (*Sellers v. Greer, supra*). In *Forthman v. Deters*, 206 Ill. 159, the court said: "It is well settled by the decisions of this and other courts that, where a party accepts and adopts a written contract, even though it is not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound by them."

To return the verdict which was returned in the case at bar, the jury must have found that the defendant assented to the terms of the contract as submitted by the plaintiff and that in having 50,000 catalogue covers delivered to the plaintiff and inserts for 10,000 catalogues, and in receiving and paying for the latter at the contract price, the defendant had acted on the contract and, in our opinion, that finding cannot be said to be against the manifest weight of the evidence,

This was a contract which might be performed within a year and therefore the statute of frauds does not apply.

It is contended that the plaintiff did not submit any evidence as to a loss of profits by reason of the refusal of the defendant to order the making up of the balance of the catalogues contracted for and the plaintiff did not make out a prima facie case as to its damages.

Where a party has contracted with another to manufacture certain articles, and the other repudiates the contract and refuses to accept the articles, and suit is brought against the latter for the breach, the damages recoverable are necessarily considered to be the amount that might have been realized, had the contract been carried to completion. If the articles so refused have been manufactured and have a market value, the damages will be the difference between the contract price and the fair market value at the time of the breach, provided the latter is less than the former. *Penn Plate Glass Co. v. James H. Rice Co.*, 216 Ill. 567; but if they have no market value, the damages will be the contract price. *Bookwalter v. Clark*, 10 Fed. 793. But if the articles so refused have not been manufactured, the damages will be the contract price less the cost of manufacture. *Kingman & Co. v. Hanna Wagon Co.*, 176 Ill. 545.

In the case at bar the color chips had been made up for the full quantity of 50,000 catalogues and the testimony was that the balance left on hand after the 10,000 catalogues ordered had been supplied with chips and had been bound and delivered, were worthless for any other purpose. As to the 40,000 catalogues not taken and not made up, the plaintiff had not been called on to paste the chips onto the pages of the catalogues or to bind the pages into the covers or to inspect them, and consequently in submitting its evidence as to damages, the plaintiff took the contract price and deducted the

costs of the three operations above referred to, figuring those costs on the basis that was used in fixing its price of 29½ cents per thousand chips. In our opinion that was at least sufficient to make out prima facie proof as to the plaintiff's damages. The contract between the parties did not call for deliveries of any quantities of the catalogues at specified times. The contract was breached by the defendant when the plaintiff was advised that no more catalogues would be required and the plaintiff could sue at once, as it apparently did.

The plaintiff had manufactured all the material called for by the contract and the only items remaining to be done under the contract were the items of service or labor incident to pasting, binding and inspecting the materials already manufactured and to be furnished by the defendant. Under the facts involved here, we are of the opinion that if the defendant contended that, at the time the contract was breached by it, it would have cost the plaintiff more to complete the three items of labor referred to than the plaintiff had estimated would be the cost, it was incumbent on the defendant to show it.

It has been held in a number of cases involving services, where suit has been brought to recover damages caused by a breach of the contract, by the party for whom the services were to be performed, that the compensation agreed upon is prima facie the measure of damages and that where the defendant contends that there are matters which should be taken into consideration, in the reduction of damages, the burden is upon him to establish that fact, together with the amount of the reduction. *School District No. 4 v. Stilley*, 36 Ill. App. 133; *Costigan v. Mohawk & H. R. Co.*, 2 Denio (N. Y.) 609; *Walworth v. Pool*, 9 Ark. 394; *Steinberg v. Gebhardt*, 41 Mo. 336 (old page 520); *Danley v. Williams*, 16 Wis. 605.

The last case cited involved the sufficiency of a com-

plaint, one count of which alleged a contract between the plaintiff and the defendant, by which the plaintiff was to do the carpenter work upon a house for a specified sum and, further, that the work had all been performed by the plaintiff except four or five days' work and that the plaintiff was ready and willing to complete it but had been prevented by the fault of the defendant in not furnishing the materials. This count sought a recovery of the entire contract price less the payments which the defendant had made. It was complained that the trial court had erred in refusing an instruction submitted by the defendant, the substance of which was that the complaint was insufficient to authorize a recovery, and it was held that the count was not so defective as to justify the instruction asked, it being obvious that it stated facts enough to show the plaintiff's right to recover the entire contract price less the value of four or five days' work, but it was pointed out that the defendant had set up in his answer what it would have cost the plaintiff to complete the work, "thus putting in issue all the facts necessary to recovery for the work actually done," which seems to have been the remedy which the plaintiff was seeking. After thus deciding the issue presented, the writer of the opinion proceeds to state that the count referred to stated a good cause of action for the whole contract price. It was pointed out that the rule of damages in such cases is not always necessarily for the whole contract price, but that the defendant may mitigate the damages by showing that the plaintiff might have protected himself by entering into other employment after he was prevented from completing his contract by the defendant. But, the opinion proceeds "this is a matter of proof by the defendant and is not inconsistent with the position that the legal rule of damages upon a case like the one in the first count of this complaint is, prima facie, the contract price. This rule is, of course, subject to the other."

Central Trust Co. v. John M. Smyth Mer. Co., 222 Ill. App. 347.

In explanation of the fact that it had caused a printer to deliver 50,000 catalogue covers to the plaintiff, the defendant offered to prove by one of its witnesses that it was the custom of the printing trade to store with the concern which was doing the work, stock which is to be used beyond the immediate requirements of the particular job which is being done and that this custom was known to the plaintiff. In our opinion the trial court did not err in sustaining the plaintiff's objection to that evidence. It does not appear that the work which the plaintiff was doing was work comprehended within the term "printing trade" nor that the catalogue covers could be considered as "stock." But even with that evidence in the record, we are of the opinion that the result could not have been changed, and even if the evidence be considered admissible and the action of the trial court in refusing to allow it to be submitted to the jury error, we would be obliged to regard it as harmless and in no sense a ground for reversing the judgment.

We find no error in the record and therefore the judgment of the municipal court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and TAYLOR, J., concur.