320        APPELLATE COURTS OF ILLINOIS.

S. Ward Hamilton Co. v. Channell Chemical Co., 242 Ill. App. 320.

## S. Ward Hamilton Company, Appellee, v. Channell Chemical Company, Appellant.

### Gen. No. 30,709.

1. CONTRACTS—*when proof in action for breach sufficiently supports declaration to warrant submission to jury.* Where the declaration in an action for breach of contract alleged that "plaintiff * * * did * * * make up a large quantity of mop centers and offered and was ready and willing to deliver to the said defendant the balance of said mop centers * * * and requested the defendant to accept and pay for the same * * *, yet the defendant failed to do so, to the damage of the plaintiff in the sum of $50,000," and there was proof that defendant, while accepting and paying for all mop centers actually made up by plaintiff, notified plaintiff not to make further deliveries, and that plaintiff thus had left on hand a quantity of material purchased for use in completing the contract, such proof sufficiently supported the declaration to warrant its submission to the jury.

2. CONTRACTS—*sufficiency of evidence, in action for breach, to show execution of new agreement by parties after breach.* Evidence, in an action for breach of contract to accept and pay for a specified quantity of mop centers to be manufactured by plaintiff for defendant, held not to show that after the failure of the defendant to perform within the time limited by such contract, the parties entered into a new agreement covering the subject matter of the former contract.

3. CONTRACTS—*completion of contract by manufacturer agreeing to make goods to purchaser's order as prerequisite to suit for damages resulting from failure of purchaser to perform.* Under a contract for the manufacture and delivery of a quantity of mop centers, wherein plaintiff agreed to begin deliveries within a certain period and to continue deliveries, "as ordered," up to a stated quantity daily, and defendant agreed to accept delivery of the entire quantity within 18 months after deliveries began, plaintiff was not required to complete and tender delivery of the entire quantity before suing for damages consequent upon defendant's failure to perform, where defendant had failed to submit orders as contemplated, and had, after the expiration of the 18 months' period, accepted and paid for all mop centers then made up, but notified plaintiff not to make further deliveries.

4. CONTRACTS—*sufficiency of evidence to establish an accord and satisfaction between parties following breach.* Evidence, in an

S. Ward Hamilton Co. v. Channell Chemical Co., 242 Ill. App. 320.

action for breach of a contract to accept and pay for a quantity of mop centers to be made up and delivered by plaintiff to defendant, held to raise an issue for the jury as to whether there was an accord and satisfaction between the parties subsequent to the defendant's failure to perform, and to support their conclusion adverse to the defendant on that issue.

5. NEW TRIAL—*when leave to file affidavit in support of, properly denied.* Leave to file, in connection with a motion for a new trial, an affidavit to the effect that opposing counsel had commented, in argument, upon pleas and an affidavit of merits which had been eliminated from the case by the filing of subsequent pleadings, and to the effect further that such withdrawn pleadings had passed into the hands of the jury, held properly denied, where the record failed to show that the comment mentioned had in fact been made, or if made, that objection had been raised thereto, and where neither the facts stated in the affidavit nor the record warranted an inference that the pleadings mentioned actually came into the hands of the jury.

6. DAMAGES—*evidence inadmissible touching measure of damages for breach of contract to accept and pay for articles to be manufactured to customer's order.* In an action for breach of a contract to accept and pay for a quantity of goods manufactured to defendant's order, under the terms of which plaintiff was required to furnish, at its own expense, the dies necessary for the construction of the articles, it was error to admit evidence, as bearing upon the measure of damages, touching the cost of making such dies.

7. DAMAGES—*loss of profits as measure of damages for breach of contract to accept and pay for articles to be made to customer's order.* Where one has contracted with another to manufacture certain articles, and the customer breaches the contract by refusing to take the articles, or some of them, if the articles have not been manufactured, the proper measure of damages usually will be the contract price less the cost of manufacture, that is, the net profit the manufacturer would have made on the articles refused.

8. DAMAGES—*depreciation in value of material bought for use in completing contract as element in damages recoverable on breach of customer's contract to accept and pay for articles to be made to his order.* Where one has contracted with another to manufacture certain articles, and the customer breaches the contract by refusing to take the articles, or some of them, it is proper to include, as an element of the manufacturer's damages, the depreciation in value, if any, of materials left on hand which he had

purchased to be used in performing the contract, in addition to his loss of profit on the unexecuted portion of the contract.

9. DAMAGES—*when depreciation in value of material bought to complete contract improperly considered as element of damages recoverable on breach of customer's contract to accept and pay for goods to be made to his order.* Where in an action for breach of a contract to accept and pay for a stated quantity of goods to be manufactured to defendant's order plaintiff's proof as to the estimated loss of profit upon the uncompleted portion of the contract was based upon a computation taking into account the depreciation in value of materials left on hand which had been purchased to complete the contract, plaintiff was not entitled to have considered, as an additional element of damage, the amount of its loss through such depreciation.

10. APPEAL AND ERROR—*remittitur as cure for erroneous admission of testimony touching measure of damages in action for breach of contract.* Where it appears, on appeal from a judgment for plaintiff in an action for breach of contract, that evidence was erroneously admitted touching the measure of damages, but that such evidence related solely to specific, definite and expressly ascertainable items making up the damages sued for, the error may be cured by remittitur.

Appeal by defendant from the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Affirmed on remittitur. Opinion filed November 17, 1926. Rehearing denied December 2, 1926.

JOSEPH B. LAWLER, for appellant.

JOHN A. BLOOMINGSTON, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

The parties to this case entered into a contract on October 3, 1919, by which the plaintiff, S. Ward Hamilton Company, agreed to manufacture and sell to the defendant, Channell Chemical Company, 3,000,000 mop centers. There were three sizes specified in the contract, numbered 3, 4 and 10. The contract called for 750,000 of No. 3, 1,500,000 of No. 4, and 750,000 of

No. 10.   Under the terms of the contract, the defendant agreed to pay the plaintiff $51.50 per thousand for the No. 3 centers; $46.50 for the No. 4, and $56.50 for the No. 10.   The plaintiff undertook to deliver 10,000 centers per day, "If ordered by first party (defendant) in following quantities:"   2,500, No. 3; 5,000, No. 4; and 2,500, No. 10.   Deliveries were to be made within one week from the date of the order, and the contract provided that deliveries on No. 4 centers were to begin within eight weeks from the date of the contract; on No. 3, within nine weeks, and on No. 10, within ten weeks.   The plaintiff agreed to keep 50,000 No. 4 centers on hand available for immediate delivery, and 25,000 of each of the other sizes.   The contract also provided as follows:   "The first party (defendant) agrees to accept delivery of the entire 3,000,000 mop centers within eighteen (18) months from date of first delivery."

The first delivery under the contract was made on December 19, 1919, about 10 weeks after the making of the contract.   Between that date and July, 1921, the plaintiff delivered, and the defendant paid for, 2,059,- 943 centers, which were all the centers either paid for by the defendant or manufactured by the plaintiff, under the contract.   The plaintiff brought this action by reason of the alleged breach of the contract by the defendant in failing to order or take the remainder of the centers, contemplated by the contract, amounting to 904,057.

After alleging the number of centers of each kind taken and paid for by the defendant under the contract, the plaintiff's declaration alleged that "thereafter the plaintiff   *   *   *   did   *   *   *   make up a large quantity of mop centers and offered and was ready and willing to deliver to the said defendant the balance of said mop centers   *   *   *   and requested the defendant to accept and pay for the same   *   *   *, yet the defendant failed to do so, to the damage of

the plaintiff in the sum of $50,000.'' According to the affidavit of claim, the plaintiff's claim was made up of $24,500 in loss of profits, $12,000 in ''depreciation of the materials which the plaintiffs purchased,'' in order to fill the contract, and $4,000 for dies made specifically for this contract, making a total of $40,500.

The defendant pleaded the general issue, payment in full, and accord and satisfaction. The issues thus joined were submitted to a jury, resulting in a verdict finding the issues for the plaintiff and assessing its damages at the sum of $25,375. Judgment was thereupon entered for the plaintiff, for that amount, to reverse which the defendant has perfected this appeal.

In support of its appeal, the defendant first contends that the trial court erred in denying its motion for a peremptory instruction, for several reasons. It is contended that the plaintiff failed to prove its case as alleged in its declaration. In our opinion, that contention is not supported by the record. It is true that the proof does not show that the plaintiff made up ''a large quantity of mop centers,'' beyond those taken and paid for by the defendant, as the declaration alleges. But the declaration also alleges that the plaintiff ''offered and was ready and willing to deliver to the said defendant, the balance of the said mop centers,'' and requested the defendant to accept and pay for them but that the latter refused to do so.

The evidence submitted in behalf of the plaintiff tends to show that on July 11, 1921, the plaintiff had on hand, ready for delivery, a large quantity of centers of the different sizes, amounting in value to approximately $19,000 at the contract price; that the plaintiff had then been carrying ''a large inventory for something like eight months, expecting them to take deliveries,'' and that during the previous six months, there had been ''no regular deliveries, as called for in the contract.'' The record shows that representatives of the plaintiff called at the plant of

S. Ward Hamilton Co. v. Channell Chemical Co., 242 Ill. App. 320.

the defendant in November, 1920, to see "why they were not resuming deliveries," telling the defendant that plaintiff "had a large quantity of mops on hand and did not feel as though we could carry them any longer"; that the defendant represented that its business was very poor and they could not take the centers in large quantities at that time but they hoped business would pick up after the first of the year; that the parties "had continual conferences with reference to mops, after that time, for at least two or three months," and that at such a conference held in July, 1921, the plaintiff insisted it must have an immediate settlement for all the centers it then had on hand. The result of that conference was that the defendant gave the plaintiff three trade acceptances, one for $4,963.63, due in 60 days, one for $4,963.63, due in 90 days, and another for $9,927.29, due in 120 days, in payment for all the centers which the plaintiff then had on hand, and asked the plaintiff to hold them at its factory until the defendant requested delivery, and that all of them were afterwards delivered to the defendant. It appears from the evidence submitted by both parties that at this time the defendant had begun the manufacture of its own mop centers, and the plaintiff's evidence is to the effect that the defendant requested the plaintiff not to "make up any more mops at the present time because we don't know how well they will go because we are making a new style mop." The evidence submitted by the plaintiff is further to the effect that some time later, the witnesses stating they could not fix the time definitely, within several months, representatives of the plaintiff again saw the defendant, asking what the defendant "was going to do about the balance of the contract," and the defendant's representative said they didn't want any more mops. Some effort was made to see if the defendant could make some use of the material the plaintiff had remaining on hand

for the purposes of this contract, but it came to nothing. The record shows that there were times when the plaintiff was behind in deliveries and others when, as already stated, the defendant requested the plaintiff to make no more deliveries until further notice. The record also shows that there were times when the defendant was asking the plaintiff to make deliveries on one of the sizes, far in excess of the daily quantity called for by the contract, saying that it was experiencing a large demand for that size but little demand for the others. In our opinion, this proof sufficiently supported the plaintiff's declaration to require the trial court to submit it to the jury.

It is further contended that the trial court should have given the jury the peremptory instruction requested by the defendant, because, on the plaintiff's own theory of the case, recovery could not be had on the original contract entered into by the parties, because that contract expired by its own terms, 18 months after the first delivery was made in December, 1919, namely, in June, 1921, and that, after that time, in July of that year, the parties entered into a new arrangement or contract. The evidence on this point is conflicting. That which was submitted in behalf of the plaintiff does not tend to show that the parties entered into a new contract in July, 1921. Peterson, the secretary and treasurer of the plaintiff company, testified that when settlement was made by the parties for the mop centers the plaintiff then had made up and on hand, and the defendant gave the plaintiff the three trade acceptances referred to, one Andrews, representing the defendant, stated that inasmuch as the defendant was giving the plaintiff these trade acceptances for all the centers then on hand, the defendant "expected us to sign a release for the contract," but that he replied that plaintiff could not do that as it had on hand a large quantity of material purchased for the execution of this contract, on a high market

S. Ward Hamilton Co. v. Channell Chemical Co., 242 Ill. App. 320.

which at that time had fallen off considerably, "but we would be willing to give them a like amount of stamping for some other mop or some other stamping which they could use in their plant," and that Andrews replied that "maybe" they could do that, "and the thing was left on that basis." On cross-examination, this witness testified that at the time of the July conference, when the defendant asked that the plaintiff execute a release of any further liability under the contract, the representatives of the plaintiff said: "No, we would not do it,—we would not consider anything of that kind." Hamilton, the president of the plaintiff company, testified that at the time of the conference between the parties in July, 1921, after the defendant had requested a release and the plaintiff had refused to give it, Channell, president of the defendant company, said: "Well, * * * we will take the mops (which plaintiff then had on hand) and we will fix the other about the material later." It is not shown by any of the testimony submitted by either party that any arrangement was later made about the material left on hand. Plaintiff submitted testimony tending to show subsequent conferences in which the plaintiff attempted to have the defendant take the balance of the contract. Defendant submitted testimony to the contrary. Moreover, we cannot agree with defendant's contention that the contract expired by its own terms, 18 months after the first delivery. By the terms of the contract, the defendant did agree "to accept delivery of the entire 3,000,000 mop centers" covered by the contract, within that period. But the contract also provided that plaintiff was to make deliveries within one week from the date of the orders sent in by the defendant, and the plaintiff further agreed to make delivery of 10,000 mop centers per day "if ordered" by defendant in the proportion of 5,000 of No. 4, 2,500 of No. 3 and 2,500 of No. 10. It is not shown that defendant did order in that propor-

tion. On the contrary, as previously pointed out, there is correspondence in the record showing the contrary. There is further conclusive proof in the record that there were considerable periods when the defendant was requesting plaintiff to retard deliveries or hold them off altogether. There were other periods when defendant was urging increased deliveries of some of the centers. The agreement of the defendant to accept delivery of all the centers covered by the contract within the time specified was for the benefit of the plaintiff. The latter did not seek to take advantage of that provision of the contract but after 18 months expired the plaintiff delivered, and the defendant took and paid for, a large quantity of centers, and the plaintiff submitted evidence tending to show that it urged the defendant to submit orders for the balance but that the latter declined to do so. It is apparent that under the terms of this contract, and under the evidence to which we have referred, it could not successfully be contended, as defendant attempts to do, that before the plaintiff could have a claim for damages against the defendant for a breach of this contract, it would be necessary for the plaintiff to make up and tender the balance of the mop centers called for by the contract.

It is the defendant's further contention that the peremptory instruction should have been given because the proof shows there was an accord and satisfaction of the contract between the parties. In our opinion, that contention is not borne out by the record. We have already referred to some of the evidence submitted, touching that question. In addition to that referred to above, there was the following: Hamilton testified that at the conference between the parties in July, 1921, Channell said the defendant would pay the plaintiff for the mop centers the latter then had on hand, "if you fellows will cancel the balance of this contract," which the plaintiff declined to

do because of the material remaining on hand, and that Channell then said defendant would take the centers then on hand "and we will fix the other about the material later." Channell testified to the contrary, saying that at the time of this conference there was some talk about releases; that defendant called up its lawyers, who advised them to get releases; that the conversation between the parties was not as testified to by plaintiff's witnesses; that "they agreed to give a release," and that Peterson then called attention to the loss plaintiff was going to suffer on the material remaining on hand and that defendant's representatives said they would use it if they could and that he (Channell) said to Andrews that if plaintiff would deliver such material to defendant's plant, the latter would pay for it. Channell testified on cross-examination that when he handed Peterson and Hamilton the defendant's trade acceptances, "they walked out settled in full."

On that testimony, not only is it true that the issue of accord and satisfaction was for the jury, but we are further of the opinion that it is clear this court could not properly overturn the verdict of the jury holding there was not an accord and satisfaction. No release was then given, but Channell testified the defendant agreed to send one later. Plaintiff's testimony is to the contrary. It would be very unusual for defendant to give approximately $20,000 in trade acceptances, on the basis of a release of all further liability under the contract, on merely a promise that such a release would be forthcoming. The trade acceptances were not drawn as though they constituted payment in full on the contract. Each recited: "The obligation of the acceptor hereof arises out of the purchase of goods from the drawer." Howard, who was acting as vice president of the defendant company, was a lawyer, admitted to practice at the Illinois Bar, testified that he could have drawn a release. He was present when

the trade acceptances were given and executed them in defendant's behalf, and yet no release was taken from the plaintiff.

In connection with the motion for a new trial, counsel for the defendant asked leave to file his affidavit in which he set forth that counsel for plaintiff, in his closing argument to the jury, commented upon the pleas and affidavit of merits filed by the defendant to the plaintiff's original declaration, although such pleas and affidavit of merits had been eliminated from the case, as the plaintiff had later filed an amended declaration to which the defendant had filed new pleas and an affidavit of merits. In this affidavit, sought to be filed by counsel for the defendant in connection with the motion for a new trial, counsel further set forth that when he returned to the court room where the trial of this case took place, on the morning the verdict was returned, it came to his attention "that a copy of said pleas and affidavit of merits   *   *   * was with all the said Exhibits as given to him at the time by the said bailiff" of the trial court, and that he then called the court's attention to the fact that these pleadings "had been returned from the jury room along with the Exhibits," and that they had been submitted to the jury together with the exhibits, without his knowledge. In our opinion the trial court did not err in denying defendant's motion for leave to file this affidavit. It is not shown by the record that counsel for plaintiff commented on these pleadings in the course of his closing arguments, or that objection was made, if he did do so. Further, the only facts set up in this affidavit are that when counsel for the defendant came to the court room on the morning the verdict was to be read, he found these pleadings among the exhibits which were handed over to him by the bailiff. That they had gone to the jury room with the exhibits, is necessarily the conclusion

of the affiant.    There is no proof in the record show-
ing that they, in fact, did go to the jury.

The defendant complains of an instruction on the
subject of damages which the trial court gave and
also contends that the trial court erred in refusing to
give an instruction which was tendered on the subject
of the giving of the trade acceptances.    The record
fails to show that the defendant objected to the ac-
tion of the court as to either of these instructions.
However, there was no error in refusing the instruc-
tion on the giving of the trade acceptances.    The court
gave an instruction on that subject which fully cov-
ered the question from the defendant's point of view.

We have previously handed down an opinion in this
case.    After that decision was announced both par-
ties filed petitions for a rehearing and both petitions
were allowed.    Neither of the parties, however, filed
any reply to the petition of the opposite party for
rehearing.    The questions hereinafter referred to in
this opinion (which were also covered in the former
opinion) were the matters covered by one or the other
of the parties in the rehearing petitions.    We reach
the same result in the present decision, as in the one
previously handed down, but for somewhat different
reasons.

The instruction on damages of which the defendant
complains authorized the jury, in case a verdict was
returned for the plaintiff, to award as damages, not
only the difference between the cost of manufacture
and the contract price on the unexecuted portion of
the contract, but also the loss represented by the dif-
ference "between the cost of the material purchased in
preparation for the contract, if any, and the fair mar-
ket price thereof at the time of the breach of the con-
tract," and also the loss of the dies.    In view of the
fact that no objection or exception is shown by the
record in connection with the giving of this instruction,
we would not be warranted in reversing the judgment

332    APPELLATE COURTS OF ILLINOIS.

S. Ward Hamilton Co. v. Channell Chemical Co., 242 Ill. App. 320.

on this ground. But, in connection with the argument presented on this instruction the defendant also contends that the trial court erred in its rulings on the evidence submitted by the plaintiff, in the matter of its damages. The defendant not only objected to much of this testimony when it was offered, but later moved to strike it out. In our opinion, some of it was admissible and some of it was not. The witness Peterson was properly permitted to state that he had computed the profit of the plaintiff in the manufacture of the mop centers covered by the contract, and that it was 33⅓ per cent based on the contract price and the cost of raw material, labor and overhead. He was shown to be entirely familiar with that end of plaintiff's business. Defendant had full opportunity to test the basis of his knowledge as to profits, on cross-examination. But this witness was further permitted to testify, over objection, that the cost of the dies, pro rated, so as to apply to the unexecuted portion of the contract, was $3,332, although the contract provided that plaintiff was to "furnish at its own expense all dies necessary for the construction" of mop centers, defendant to have the privilege of changing the design of centers, in which event it was to stand the initial cost of the first dies. In this ruling we are of the opinion the trial court erred. The cost of the dies could not be permitted to enter into the plaintiff's damages in any respect under the provisions of the contract.

Over the repeated objections of the defendant, the witness Peterson was permitted to testify that plaintiff had on hand 422,222 pounds of steel, which it had purchased to cover the unexecuted portion of this contract; that plaintiff had paid an average of 5 cents a pound for it, and that in July, 1921, and the succeeding months, this material was worth one and one-half to two cents a pound, and that the shrinkage in the value of this material amounted to $13,566.67.

This witness testified that the plaintiff used all of this material, subsequently, to manufacture other articles, figuring it at the then market value.

Where one has contracted with another to manufacture certain articles and the latter breaches the contract and refuses to take the articles or a part of them, if the articles so refused have not been manufactured, the proper measure of damages will usually be the contract price, less the cost of manufacture—that is, the net profit the manufacturer would have made on the articles refused. *Kingman & Co. v. Hanna Wagon Co.*, 176 Ill. 545; *Central Trust Co. v. John M. Smyth Merchandise Co.*, 222 Ill. App. 347.  But where the manufacturer in proceeding to carry out the contract to manufacture, either buys or enters into a contract to buy, all the materials necessary to manufacture the articles called for by his contract, and when such contract is later breached, the value of such material, so purchased, or contracted for by the manufacturer, has depreciated, another element enters into the damages of the manufacturer, which he should be permitted to recover, which element is represented by the shrinkage in the value of materials purchased or contracted for.  In fixing the amount of damages recoverable in such a case, the theory of the law is that the manufacturer may recover such damages as will put him, as far as practicable, in as good a position as he would have occupied, if the contract had been carried out. In such a situation as we have referred to, if the contract had been carried out, the manufacturer would not only have received his full profit under the contract, but he would also have received an amount from the other party to the contract sufficient to reimburse himself in full for the amount he had either paid out or obligated himself to pay for his materials.  Where the value of those materials left on hand has not depreciated, this element of damage will of course not be present, as the manufacturer will have the materials

on hand still valued at the full cost price. But if the materials have depreciated in value, this element of loss presents itself. For instance, in the case at bar the uncontradicted testimony is that the plaintiff bought all the material needed to fulfill its contract, at a price of five cents a pound, and when the contract was breached, the plaintiff had on hand over 400,000 pounds of material. If the contract had been carried out, the plaintiff would have used up this material on the contract and would have received, in addition to his profit, an amount sufficient to meet the material cost in full at the price of five cents a pound. But now, with the contract breached, and over 400,000 pounds of material left on hand, the plaintiff is not only deprived of its profit on the unexecuted portion of the contract, but it has received nothing with which to reimburse itself for the cost of this material at a price of five cents a pound, and the material itself can reimburse it for such cost, only to the extent of its present value, which is two cents a pound. Therefore, we are of the opinion, such being the circumstances, that the plaintiff's proper measure of damages is the loss of profits on the unexecuted portion of the contract, plus the depreciation in the cost of the material left on hand. Therefore, the evidence objected to, covering the amount of the material left on hand, its original cost and its value as of the date of the breach of the contract, was competent and material and the court properly overruled the objections.

However, in figuring the profits the plaintiff would have received on the unexecuted portion of the contract, the material cost should be figured at the price which the plaintiff paid for it, which in this instance was five cents. The witness Peterson testified that in figuring the profits which the plaintiff would have made on the balance of the contract if it had been completed, he figured this material not at its cost price of five cents a pound, but at two cents a pound which

was its value at the time the contract was breached. In so doing it will be seen that the plaintiff absorbed the shrinkage in the value of the material left on hand, into its loss of profits. In other words, on such a basis, the shrinkage in the value of the material becomes a part of the 33⅓ per cent loss in profits on the unexecuted part of the contract. Of course, the plaintiff may not recover the element of damage represented by the shrinkage in the value of material left on hand, both in that form and also as an element in the loss of profits. For example, 33⅓ per cent on the unexecuted portion of the contract amounted to $15,-266.21. According to the testimony of Peterson, that amount was arrived at by figuring the cost of steel on the unexecuted portion of the contract at two cents a pound. But that witness also testified that the amount the plaintiff actually paid for this steel was five cents a pound. At the time the contract was breached the value of this material had depreciated three cents a pound. That depreciation was absorbed into the loss of profits when that loss of profits was based on a material cost of two cents a pound, rather than the actual cost of five cents a pound. The plaintiff will, therefore, have received the full amount of the shrinkage in the value of material if it is paid a loss of profit on the unexecuted portion of the contract, figured at 33⅓ per cent, based on a material cost of two cents a pound. Such being the case, the plaintiff may not be permitted to receive that shrinkage in value of materials as another and additional element of loss. To permit it to do so would be to permit it to get the benefit of that element twice, once as an element in the loss of profits and again in the shape of shrinkage in the value of material. For the foregoing reasons, we are of the opinion that the amount referred to by the witness Peterson, as loss in profits on the unexecuted portion of the contract, which was $15,266.21, represents all that the plaintiff is en-

titled to recover from the defendant by reason of the breach of this contract.

It is urged by the defendant that if this court holds that parts of the evidence which were offered on this question of damages were incompetent, and if it is held that the trial court erred in submitting such evidence to the jury, then it is impossible to cure such error by a remittitur, as it cannot be ascertained just what effect such evidence had on the jury in returning the verdict for $25,375. In support of that contention the defendant cites *Chicago, M. & St. P. R. Co. v. Hall,* 90 Ill. 42; *Chicago & E. I. R. Co. v. Donworth,* 203 Ill. 192; *Lauth v. Chicago Union Traction Co.,* 244 Ill. 244; *Lyons v. Chicago City Ry. Co.,* 258 Ill. 75; *Stadler v. Chicago City Ry. Co.,* 180 Ill. App. 313; and *Newcomb v. Chicago City Ry. Co.,* 192 Ill. App. 74. In our opinion these cases may all be distinguished from the situation presented in the case at bar. For example, the *Donworth* case was an action for injuries caused by the alleged negligence of the railway company. The plaintiff recovered a judgment of $5,000. This court found error in the record and to avoid the effect of it the plaintiff was permitted to enter a remittitur in the sum of $2,000, whereupon, this court affirmed the judgment in the sum of $3,000. On appeal to the Supreme Court it was held that certain opinion evidence which was admitted by the trial court was incompetent and should not have been admitted. The court then said: "To what extent the damages were so enhanced it was not possible for the Appellate Court to ascertain. * * * In such state of case the error in the admission of the evidence cannot be cured by the entry of a remittitur." The same situation was present in the *Lauth* case, where the trial court improperly admitted evidence relating to mental anguish, suffered by reason of impending death, and the jury was permitted to take that into consideration in fixing the damages. The court held

that the error in admitting such evidence could not be cured by remittitur, as the error had been committed as to a substantial fact bearing upon the right of recovery, in a respect which was not susceptible of computation. The same situation was presented in the *Lyons* case, where the plaintiff recovered a judgment of $7,000 in the trial court, which was reduced by a remittitur of $2,500 in this court, where it was held that certain evidence which the jury had before them, on the question of damages, should not have been admitted. On appeal to the Supreme Court that court said: "It may be that this improper evidence accounted for a large part of the verdict. Such an error in the admission of evidence is not susceptible of computation, and even a remittitur cannot cure it."

In all these cases, the evidence held to have been erroneously admitted was related to the damages as a whole. In the case at bar, however, the evidence complained of related to specific, definite, expressly ascertainable items making up the damages sued for —the loss of profits, the shrinkage in value of the material left on hand, and the dies. That being the case the effect of the admission of the evidence complained of, and which we consider incompetent, is susceptible of computation in exact figures, and we are, therefore, of the opinion that the error pointed out is such as may be cured by a remittitur.

From the evidence in the record relating to the different specific items of damages claimed, we hold that the plaintiff was entitled to receive, as the total amount of damages, $15,266.21, whether that amount be considered as the profits the plaintiff would have received if the contract had been carried out, including the shrinkage in the value of the steel, inasmuch as the material cost was figured at two cents a pound in determining that figure, or whether that amount be considered as the loss of profits with the steel figured at five cents a pound, which would make the loss

of profits $1,699.54, plus the shrinkage in the value of the material left on hand, as a separate item, which was $13,566.67, which items, added together, equal the sum of $15,266.21.

For the foregoing reasons, the judgment of the circuit court is affirmed upon condition that the plaintiff file a remittitur in this court within 10 days, in the sum of $10,108.79, in which event two-fifths of the costs in this court will be taxed against the plaintiff and three-fifths against the defendant. Should such remittitur not be filed, the judgment appealed from will be reversed and the cause will be remanded to the circuit court for a new trial.

*Judgment affirmed on remittitur.*

Taylor, P. J., and O'Connor, J., concur.