KINGMAN & CO.

*v.*

THE HANNA WAGON COMPANY.

*Opinion filed December 21, 1898.*

1. CONTRACTS—*what will not excuse failure to perform contract.* The fact that some of the wagons received under a contract calling for a certain number within a specified time are defective does not entitle the buyer to continue to order as many wagons as the demands of trade require, being less than the number contracted for, and at the expiration of the contract treat it as rescinded as to the wagons he has failed to take.

2. SAME—*action for breach—when evidence of defects is inadmissible.* In an action by a wagon manufacturer for breach of contract occasioned by defendant's failure to take the number of wagons contracted for within a specified time, evidence of defects in some of the wagons received and paid for by defendant is properly refused, where it is not offered under any claim of damages by recoupment, but as excusing defendant's failure to take any more wagons than he was able to sell.

3. DAMAGES—*when market price is not the measure of damages.* The difference between the contract price and market price of an article is not the measure of damages upon the purchaser's refusal to accept and pay for the same, where, from the nature of the article or the terms of the contract, there is no market in which the article may be sold.

4. SAME—*when the difference between cost of manufacture and contract price is the measure of damages.* The difference between the cost of manufacturing and delivering wagons under the terms of the contract and the contract price is the measure of damages in an action against the purchaser for refusal to take the number contracted for, where, under the contract, the purchaser has the exclusive right to market the wagons in the State where they were manufactured and delivered.

5. APPEALS AND ERRORS—*when alleged error in excluding portions of depositions cannot be considered.* Alleged error in excluding portions of depositions cannot be considered by the Supreme Court unless the entire depositions are set out in the record.

6. SAME—*whether damages were excessive is not a question for Supreme Court.* Whether the damages in an action for breach of contract are excessive is a question of fact settled by the judgment of the Appellate Court.

*Kingman & Co.* v. *Hanna Wagon Co.* 74 Ill. App. 22, affirmed.

176—35

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

This was an action of assumpsit commenced to the February term, 1897, of the circuit court of Peoria county, by the Hanna Wagon Company, a corporation engaged in the manufacture of farm wagons at Peoria, Illinois, to recover from Kingman & Co., also a corporation, for the alleged breach of a certain written contract dated December 22, 1892, and modified by a written contract dated March 22, 1894. Kingman & Co. was engaged, as dealer, in selling all kinds of farm implements, with its principal place of business and office at Peoria, and with branch houses at Kansas City, Omaha, DesMoines and St. Louis.

The material parts of the contracts, so far as it is necessary to state them, are substantially as follows: They provide that Kingman & Co. should have the exclusive sale of wagons manufactured by Hanna & Co., in the States of Illinois, Missouri, Kansas, Arkansas, Indian Territory, Oklahoma Territory, the western half of Kentucky, and Tennessee, Iowa and Nebraska, the south half of Minnesota, and the south half of South Dakota. Under this contract of December 22, 1892, appellant ordered 3000 wagons for the year 1893, viz., from February 1, 1893, to February 1, 1894, and 3000 for the year 1894, viz., from February 1, 1894, to February 1, 1895, the yearly quantity to be distributed as follows: For the months of February, March and April 600; for May, June and July 600; for August, September and October 900; for November, December and January 900. These, under the contract, were to be taken in equal monthly deliveries, as near as possible, and it was provided therein, in detail, for the making and delivery of the wagons, and parts thereof, on board the cars at Peoria; for the packing and marking of the same; for the furnishing by appellee of a good supply of printed

matter, and also electrotypes for advertising the wagons in the territory assigned; the prices and terms of settlement, the settlements to be the 10th of each month for wagons shipped the previous month.

The parties entered upon the execution of the contract, but appellant took only about one-half of the number of wagons agreed upon for the year 1893 under the written agreement, and appellee was claiming damages by reason thereof, and was continually urging appellant to give appellee orders, as provided in the agreement. Finally the parties entered into a written contract March 22, 1894, modifying the contract of December 22, 1892, and providing that both parties cancel all claims against each other by reason of any alleged default or defaults up to that time in the performance of the contract of 1892, except as to repairs on wagons then out that were defective. It was also agreed that the wagons and parts to be furnished by appellee should be well constructed of good material and with all improvements as proposed, and to be well made throughout, and to be first-class wagons. By this last contract and modification the wagons and parts were to be furnished by appellee free on board the cars at its factory *as ordered*, and that within the ten months from April 1, 1894, to February 1, 1895, Kingman & Co. was to take 1500 wagons in equal monthly installments, with a slight variation not to exceed twenty per cent, and 500 extra cottonwood boxes at the prices mentioned in the original contract; also 100 poplar boxes at a price of $8.50 each, and for all additional poplar boxes $9 each.

By the terms of the contract appellant should have ordered and received from appellee, on an average, 150 wagons per month, and not less than 130 nor more than 180 in any one month during the period from April 1, 1894, to February 1, 1895, but appellant failed to comply with the contract in this regard. Appellee, it appears by the evidence, was importuning appellant for more orders, and

urging it to give specifications for more wagons and more boxes. Much correspondence on this matter is found in the record showing appellee's readiness to furnish the wagons and boxes provided by the contract. Of the entire 1500 wagons appellant was to take by the terms of the contract, it appears appellant ordered and accepted only 808, being 692 short of the number it should have taken within the period required by the agreement, and of the wagon boxes mentioned it ordered and received but 207, being 393 less than the number contracted for. The agreement also provided that the original contract should remain in full force and effect, except as modified by this last agreement. It also appears that after the expiration of the contract appellant ordered and received from the Hanna Wagon Company 79 wagons, and there was a dispute as to whether these last mentioned wagons were delivered as a part of the 1500 contracted for under the agreement of March 22, 1894. The defense claimed that the wagons were so defective as to affect appellant's trade, and claimed this as an excuse for not fulfilling the contract on its part.

The case was tried by a jury, and a verdict was rendered in favor of appellee for $4545. A motion for a new trial was made and overruled, and judgment was entered upon the verdict. The case was appealed to the Appellate Court for the Second District, which affirmed the judgment of the circuit court, and appellant prayed an appeal to this court asking for the reversal of the judgment of the Appellate Court.

STEVENS, HORTON & ABBOTT, for appellant.

WINSLOW EVANS, for appellee.

Per CURIAM: Among the errors assigned by appellant the two principal ones relied upon for a reversal are the following: First, the refusal of the court to admit evidence as to the defects in certain wagons received and

paid for by appellant; and second, the alleged erroneous .measure of damages adopted by the trial court.

In determining whether the court erred in refusing to admit evidence as to defects in certain wagons received and paid for by appellant, it becomes necessary to know the purpose for which the testimony was offered. It does not appear that it was offered for the purpose of recoupment, as we do not find, on examination of the evidence in the record, that any offer or attempt to offer was ·made by appellant to show the amount of damages it had sustained by reason of defective wagons, and there was no evidence before the jury by which damages for defects in wagons could be ascertained or recouped, but the only purpose in offering it appears to have been as an excuse on the part of appellant for not ordering the number of wagons and boxes required by the contract. We fail to find any evidence which shows that appellant repudiated the contract because of the defective condition of the wagons, but, on the other hand, the wagons seemed to be satisfactory, as appears from a letter of appellant to the Hanna Wagon Company, dated May 7, 1894, in which appellant says "that they were keeping the wagons to the front, and that they gave *very good satisfaction*, and that they would compare favorably with other wagons." It also appears that appellant continued to order and receive wagons every month from April, 1894, to and including January, 1895, but not the full number to be ordered by the appellant under the contract. The reason appears to have been not so much the defective condition of the wagons as the depressed condition of the market. In a letter from appellant dated August 8, 1894, to appellee, with reference to the trade in Iowa, appellant says: "In fact, we positively know that people are not making shipments into Iowa quite largely, as there is absolutely no trade. We have five men on the road in this State that are working as hard for business as any one can, and we know also that we are in a position to

make just as good prices as any one can make, quality of work considered, and yet *we are unable to sell goods for the simple reason that all dealers have some wagons in stock and are selling nothing,* hence will not place orders for future use." Counsel for appellant admit in their argument that the purpose in offering this testimony was not to prove damages, as appears from the following language used: "It was not a question of the amount of damages caused appellant, but claimed as an excuse for a refusal to take any more of the wagons." Undoubtedly appellant could have refused to receive any wagons if they were defective, but it could not continue to order each month, and receive only a portion of the wagons required to be ordered and received by it and claim the contract rescinded as to the remainder. In *Roebling's Sons' Co.* v. *Lock Stitch Fence Co.* 130 Ill. 660, this court said (p. 666): "One party to a contract cannot, by simply refusing to carry out his part of it, compel the other party to rescind it. The latter has a right to keep it alive notwithstanding such refusal. This doctrine was clearly announced in *Kadish* v. *Young,* 108 Ill. 170." Appellant by its own conduct kept the contract alive, and it could not, under the terms of the contract, refuse to take only what the demands of the trade required, when it had contracted to take a certain number during a specified time and to give orders therefor. The court properly rejected the evidence for the purposes for which it was offered.

Objection is made that the court erred in excluding certain portions of the depositions of H. L. Carey, Joshua A. Davidson, C. H. Behrens and Albert F. Aufderheide. The portions of the depositions objected to are very imperfectly set out in the abstract, and we have been compelled to resort to the record to ascertain what was admitted and what was excluded. Much of the evidence objected to was read to the jury, and portions were properly excluded for the reason hereinbefore given, and also because the inquiries were not confined to the wagons

in controversy.   In examining the record we find in the cross-examination of Carey cross-interrogatories from 49 to 59, inclusive, omitted.   In the deposition of Behrens the record says:   "Direct interrogatories 31 to 35, inclusive, omitted;" and on page 187 of the record it reads, "The balance of the deposition omitted."   No reason is given why portions of the depositions are omitted in the record.   *Non constat*, but that the portions omitted may have cured some of the excluded portions of the depositions.   But whether that is the case or not, if appellant desired to save the question sought to be raised the entire depositions should have been set out in the record.

Were the measure of damages adopted by the court, and the instructions given with reference thereto, erroneous?   The basis of the measure of damages adopted by the trial court is contained in plaintiff's seventeenth instruction, which is as follows:

"If you find, from the evidence, that the defendant has failed and refused to take a portion of the wagons and extra boxes mentioned in the contract, and pay for the same, and has thereby broken the contract in evidence, as charged in the declaration, then the plaintiff is entitled to recover damages in this case from the defendant for breach of such contract and for failure to take and pay for the wagons and extra boxes in question.   The measure of the plaintiff's damages in such case is the difference between what it would cost the plaintiff to make and deliver such wagons and extra boxes and the price which the defendant agreed, in and by its contract, to pay the plaintiff therefor; and whatever evidence shows the amount of these damages to be, it is your duty to assess the same in favor of the plaintiff."

Appellant contends that the proper measure of damages was the difference between the contract price and the market price at the time and place of delivery.   This undoubtedly is the general rule under a contract to deliver goods at a certain price and when the purchaser

refuses to accept and pay for them, because the seller may take his goods into the market and obtain the current price for them; yet where, from the nature of the articles, there is no market on which the articles can be sold, this rule is not applicable. (Leake's Dig. of Contracts, 1060.) The rule contended for by appellant is not applicable to the facts in this case. The contract provided that appellant should take 1500 Hanna wagons between March 22, 1894, and February 1, 1895, in equal monthly deliveries from April 1 to that time. Appellant, under the contract, had the *exclusive* right to sell Hanna wagons of the Hanna Wagon Company's manufacture in the States of Illinois, Missouri, Tennessee, Iowa, Nebraska, Kansas, Arkansas, Indian Territory, Oklahoma Territory, and other States. Thus appellee had no market where it could sell the wagons. If appellee had not contracted its entire product to appellant, but had been manufacturing and selling to others at the same time it was delivering to appellant, then there would have been a market to which it might have resorted, and a different question would have been presented. In Leake's Digest of Contracts, 1059, 1060, it is said the doctrine of measuring damages by the market price applies only where there is a market for goods of the description, to which the buyer or seller may resort to buy or sell and prevent further damages accruing; and that if there be no such market the further consequences have to be considered in measuring damages. Appellee could not go into the market at Peoria, where the wagons were to be delivered under the contract, without abandoning as well as violating its contract with appellant, for appellant had the exclusive sale of these wagons in Illinois. Appellant was in default. It was the duty of appellant to give orders, with specifications for the wagons and boxes, as it required them, under the terms of the contract, and it should have ordered the entire 1500 in equal monthly deliveries before February 1, 1895. This it did not do,

though frequently requested by appellee to give it orders and specifications for wagons and boxes. By reason of appellant's conduct, appellee being ready, willing and able to comply with the terms of the contract, appellee was excused from actually making the wagons and boxes and tendering them to appellant before bringing its action for damages.

In *Hinckley* v. *Pittsburg Bessemer Steel Co.* 121 U. S. 264, the defendant, Hinckley, agreed in writing to purchase 6000 gross tons of steel rails of the Pittsburg Bessemer Steel Company. Said rails were "to be made of the best quality of Bessemer steel, and to be subject to inspection as made and shipped, and to be well straightened and free from flaws, *and to be drilled as may be directed.*" The price to be paid by defendant, Hinckley, was $58 net per ton. The defendant refused to give directions for drilling, and by repeated statements of defendant that he was not ready to give drilling directions and not ready to use them, the plaintiff postponed and delayed rolling any of the rails until after the time prescribed for their delivery under the contract, and when formally requested to furnish drilling directions he informed the plaintiff that he should decline to take any rails under the contract. The court held, first, the defendant was liable in damages for a breach of the contract; second, that the plaintiff was excused from actually manufacturing the rails and tendering them to the defendant; third, that the measure of damages was the difference between the cost per ton of making and delivering the rails and the $58, the contract price. The court cited approvingly the cases of *Masterson* v. *Mayor of Brooklyn*, 7 Hill, 61; *United States* v. *Behan*, 110 U. S. 338; *United States* v. *Speed*, 75 id. 77.

In *Masterson* v. *Mayor of Brooklyn*, 7 Hill, 61, the plaintiff, on the 26th day of January, 1836, had contracted with the defendant to furnish and deliver at the site of the city hall, in the city of Brooklyn, all the marble that might be required for building the city hall, according to

certain plans and specifications and in conformity with such drawings, moulds and patterns as should be from time to time furnished by the architect. Plaintiff furnished a portion of the marble and received pay for it, but defendant suspended operations upon the building in 1837, for want of funds, and refused to receive any more materials of the plaintiff, though the latter was ready and willing to perform. An action was brought in 1840 against the defendant, founded upon the breach of contract, which occurred in 1837. The court said: "The contract here is for the delivery of marble wrought in a particular manner, so as to be fitted for use in the erection of a certain building. The plaintiff's claim is substantially one for not accepting goods bargained and sold,—as much so as if the subject matter of the contract had been bricks, rough stone, or any other article of commerce used in the process of building. The only difficulty or embarrassment in applying the general rule grows out of the fact that the article in question does not appear to have any well ascertained market value. But this cannot change the principle which must govern, but only the mode of ascertaining the actual value, or, rather, the cost to the party producing it. Where the article has no market value, an investigation into the constituent elements of the cost to the party who has contracted to furnish it becomes necessary, and that, compared with the contract price, will afford the measure of damages. The jury will be able to settle this upon evidence of the outlays, trouble, risk, etc., which enter into and make up the cost of the article in the condition required by the contract, at the place of delivery. If the cost equals or exceeds the contract price, the recovery will, of course, be nominal; but if the contract price exceeds the cost, the difference will constitute the measure of damages."

Under the authorities herein cited, and the facts in this case, the rule adopted by the circuit court for ascertaining the measure of damages was the correct one.

We have not considered each specific objection made to the ruling of the court on instructions, but what has been said covers the substantial objections made to the ruling of the court on instructions.

The contention that the verdict was excessive and erroneous cannot be properly addressed to this court, as it necessarily involves questions of fact which the statute has withdrawn from our appellate jurisdiction. *North Chicago Street Railroad Co. v. Eldridge*, 151 Ill. 542.

Finding no material error in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*