### ARNOLT CORP. v. STANSEN CORP.
(two cases).

Nos. 10276, 10277.

United States Court of Appeals,
Seventh Circuit.

May 28, 1951.

Harold A. Smith, Edward J. Wendrow, George B. Christensen, all of Chicago, Ill. (Winston, Strawn, Shaw & Black, Chicago, Ill., of counsel), for Arnolt Corp.

Nicholas J. Constantine, George A. Bosomburg, Chicago, Ill., for Stansen Corp.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Both parties appeal from a judgment order entered on July 21, 1950 by the United States District Court for the Northern District of Illinois, Eastern Division. In the first appeal numbered 10276, Stansen Corporation, defendant below, appeals from that part of the order which directs that its cross-complaint against Arnolt Corporation, the plaintiff, be dismissed, claiming that the Court should have entered judgment in its favor on said cross-complaint in the sum of $40,450. In the second appeal numbered 10277, the Arnolt Corporation, plaintiff below, appeals from that part of the said order which awarded judgment in its favor against the defendant, Stansen Corporation, in the sum of $674.05, contending that the judgment should have been for the sum of $12,341.37.

The record discloses that Arnolt Corporation filed its original complaint on August 4, 1947. On August 28, 1947, defendant appeared and filed its motion for a bill of particulars. No disposition of this motion is shown, but it does appear that on September 15, 1947, the Stansen Corporation filed its answer to the original complaint.

On May 18, 1948, plaintiff filed an amended and supplemental complaint which Stansen Corporation answered on June 4, 1948. The cause remained pending until November 21, 1949, when it came on for hearing before the District Court, waiver of jury having been filed by both parties.

As a result of hearing then held, the trial court suggested that Arnolt Corporation file a second amended complaint.

At the same time, on the representation that Stansen Corporation had just discovered that it had a claim for damages against Arnolt, the court ordered that it be permitted to file its counterclaim, and adjourned the proceedings for further hearing.

Subsequently, and on November 29, 1949, Arnolt filed its second amended complaint which was answered by Stansen on December 7, 1949. On the same day Stansen filed its counter-complaint, which Arnolt answered on December 30, 1949.

Plaintiff's second amended complaint, as amended on final hearing in February 1950, declared in substance that Stansen was indebted to it in the sum of $12,341.37 for parts of water sprinklers for which Stansen had failed to pay. It was charged that some of the parts had been delivered on Stansen's orders and that it refused to accept and pay for the remainder. The complaint, as amended, also alleged that there was an account stated between the parties showing $12,341.37 due to Arnolt. In its answer Stansen admitted that it owed plaintiff $674.05 for parts delivered on its orders. It further alleged that on April 29, 1947, Arnolt sold to Stansen the remaining sprinkler parts, to be paid for 10 days after shipment; that on August 7, 1947, it requested Arnolt to ship the parts to a South Bend company so that they might be manufactured into sprinklers but that Arnolt refused to ship unless paid in advance. Stansen denied there was an account stated.

In its counterclaim, Stansen alleged that on April 29, 1946, it had placed an order with Arnolt which had called for the manufacture and delivery of 15,000 water sprinklers, 5000 in June; 5000 in July; 3000 in August, and 2000 in September, 1946; that Arnolt had failed to deliver the 5000

sprinklers in June; and 5000 in July, by reason whereof Stansen had suffered $25,000 damages. The counterclaim also alleged that on April 29, 1947, Arnolt sold to Stansen sprinkler parts to the value of $11,667.32, which sale was alleged to be on credit, payment to be made ten days after shipment; that Stansen had requested shipment on July 31 and August 7, 1947, but that Arnolt had refused to make shipment except for cash; that by reason thereof Stansen lost $3,000. The *ad damnum* clause of the counterclaim demanded $28,000 damages.

In order to arrive at the facts concerning the transactions which form the background of this litigation it has been necessary to disregard the relationship between plaintiff corporation, its predecessors and affiliates, all acts of such corporate bodies are regarded as acts of the plaintiff. So, too, the acts of Stansen Corporation and its allied corporation, Milton Sturm & Company, are regarded as acts of the defendant.

In March 1946, and prior thereto, the defendant Stansen Corporation was selling and distributing a lawn sprinkler bearing the trade name "Travelawn," upon which an application for patent was pending. The sprinkler was already being manufactured for the defendant by Moulton Machine Shop, of South Bend, Indiana. Stansen was seeking an additional manufacturing source.

Through a broker it was brought into contact with the plaintiff, Arnolt Corporation. Conferences were held between the parties, each being represented by its president.

Prices of materials and castings used in the manufacture or assembly of the sprinkler were disclosed by Stansen and were used by Arnolt, together with its estimate of overhead and labor costs, in order to determine a price at which it would be willing to manufacture the sprinkler. As a result of the conference Arnolt submitted a price of $10.10 per sprinkler.

The record then discloses that on April 29, 1946, the defendant Stansen mailed to plaintiff its purchase order for 15,000 lawn sprinklers at $10.10 per unit. The order recited that the sprinklers were to be "delivered as follows": 5,000 in June, 1946; 5,000 in July, 1946; 3,000 in August, 1946; 2,000 in September, 1946, more or less, plus or minus as engineering changes are made.

The provision for shipment was: "Ship as directed." This order was signed "Milton Sturm & Co., by Milton Sturm." It stated that Stansen should be invoiced and that the account was guaranteed by Milton Sturm & Co.

After receipt of the order of April 29, 1946, the president of plaintiff corporation phoned the defendant company whose president, Milton Sturm, testified that he told Arnolt the sources from which body and wheel castings requirements were supplied and the prices which were paid for them by Moulton. He also testified that on behalf of Stansen he agreed to procure additional pattern equipment from which wheel and body castings were made. The record discloses that City Pattern & Foundry Company billed Stansen on May 24, 1946, for patterns for body and wheel castings in the total amount of $1,986. The new patterns were apparently required because the castings being made by Moulton had produced some leaky sprinklers. It is later made clear in the record that these patterns when completed, about May 24, 1946, were paid for and forwarded by Stansen to the Duramold Castings, Inc.

After this telephone conversation, the plaintiff corporation proceeded to tool up so that it might assemble or manufacture the sprinklers ordered by the defendant. The record contains exhibits offered by the defendant which demonstrate that beginning with June 15, 1946, Duramold Castings, Inc. billed plaintiff, or its affiliate, with sprinkler body castings. Such Duramold invoices continued up to July 27, 1946. They were paid by plaintiff or its affiliate. The record does not disclose when or where wheel castings were procured by plaintiff.

It is from the purchase order of Stansen, dated April 29, 1946, and the oral or implied acceptance thereof by Arnolt that the contract, for the breach of which damages are claimed in the cross-complaint,

arose. Therefore, it may be profitable to examine what was done under this contract by the respective parties.

During the month of June 1946, two and only two shipping directions were issued by Stansen to the plaintiff corporation. One, numbered 1A, was dated June 26, 1946, and directed Arnolt to ship to Electronic Sales Company of New Haven, Conn., 100 Travelawn sprinklers. Electronic's order for sprinklers, as shown by Stansen's Exhibit 13, was procured on June 25, 1946.

The second directive, numbered 2A, was based on an order for 350 sprinklers procured by Stansen on June 26, 1946. It directed shipment of 150 sprinklers to Ballou, Johnson & Nichols Co., Providence, R. I. Both of these directives were executed and the sprinklers shipped and paid for by Stansen's check #819, which also paid for directive 3A, issued in July.

During the month of July 1946, Arnolt received and carried out shipping directions for some 1500 sprinklers. There is in evidence a telegram, dated July 23, 1946, addressed to Stansen by plaintiff's affiliate requesting shipping directions for 400 Travelawn sprinklers within the next three days. It went unanswered.

As a matter of fact other exhibits in this record show that after July 26, 1946, such shipping directions as were issued to Arnolt during July 1946, called for only two or three sprinklers, save for one directive calling for eleven on July 30, 1946.

During the month of August 1946, the record shows that only eleven sprinklers were ordered to be shipped, all the directives being dated August first and second. It was in this month, during the latter part thereof according to his own testimony, that Stansen's president ordered Arnolt to cease production because he had "no further orders at the time."

When Stansen ordered production stopped, the plaintiff corporation had on hand some 1611 completely assembled sprinklers.

Three hundred and fifty (350) of the sprinklers on hand when production was stopped, were sold through Arnolt's efforts and with the consent of Stansen to a Mexican concern with which plaintiff had some connection. The remainder of the completed sprinklers, 1261 in number, were paid for through a loan negotiated by Stansen in September 1946, from Walter E. Heller Company, by whom these 1261 units were paid for, and at whose direction they were delivered by the plaintiff.

When production was ordered stopped by Stansen, the plaintiff had in its possession a large stock of parts for Travelawn sprinklers which, at cost, inventoried at the sum of $19,419.08. It is with these sprinkler parts that the appeal in cause No. 10277 is concerned.

We propose, however, to examine and dispose of appeal No. 10276 before considering the transactions between the parties in reference to the sprinkler parts on hand when the stop production order issued.

Stansen Corporation, in appeal No. 10276, urges that the judgment of the trial court dismissing its cross-complaint should be reversed, and that judgment should be ordered entered in its favor in the sum of $40,450.

It is insisted on its behalf that one finding of the trial court to the effect that Arnolt Corporation breached the contract of April 29, 1946, is indisputable. Stansen, just as emphatically, contends that the further finding of the District Court to the effect that it had failed to sustain the burden of proof on its counterclaim is clearly erroneous and should be disregarded.

It is undoubtedly true that a court of review under Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. has the power, even the duty, in a proper case, to overturn the findings of the trial court. As was said in United States v. United States Gypsum Co. et al., 333 U.S. 364-395, 68 S.Ct. 525, 542, 92 L.Ed. 746: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

In applying the doctrine stated in the Gypsum case, the Court of Appeals for the Second Circuit said in Orvis v. Higgins, 180 F.2d 537–539: "* * * Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decides a fact issue on written evidence alone, we are as able as he to determine credibility, and so we may disregard his finding. (b) Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we may ignore the trial judge's finding and substitute our own, (1) if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance. (c) But where the evidence supporting his finding as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances."

In the case at bar, evidence of the obligations assumed by the respective parties to the contract based on the purchase order of April 29, 1946, is entirely documentary. It is found in that purchase order in evidence as an exhibit. The Stansen Corporation obligates itself to purchase 15,000 A–100 sprinklers (complete), plus or minus as engineering changes are made, at the price of $10.10 each. The sprinklers are to be shipped as directed: 5,000 in June, 1946; 5,000 in July, 1946; 3,000 in August, 1946, and 2,000 in September, 1946. The Arnolt Corporation, by its oral acceptance, via telephone, agreed to assemble or manufacture the sprinklers and to deliver them as directed at the price named. In other words, the obligation of the Arnolt Corporation to deliver was based or conditioned upon a shipping direction to be issued by Stansen.

Many similar contracts have been construed in reported cases. In Colvin v. Weedman, 50 Ill. 311, it is held that when a contract of sale provides that the time and place of delivery shall be at the option or direction of the buyer, it becomes the duty of the buyer to give notice or direction as to the time and place of delivery.

In Weill v. American Metal Co., 182 Ill. 128, 54 N.E. 1050, it was held that the refusal or failure of a purchaser to give shipping directions was a breach of a contract of sale in which the purchaser had an option as to the place of delivery.

In Hinckley v. Pittsburgh Bessemer Steel Co., 121 U.S. 264, 7 S.Ct. 875, 30 L.Ed. 967, the defendant Hinckley agreed in writing to purchase 6000 tons of steel rails from the Pittsburgh Bessemer Company. The rails "are to be made of the best quality of Bessemer steel, and to be subject to inspection as made and shipped, and to be well straightened and free from flaws, and to be drilled as may be directed."

The defendant Hinckley was not ready to use the rails and refused to give drilling instructions. This was held a breach of the contract and Hinckley was required to respond in damages.

Compare Posey v. Scales et al., 55 Ind. 282; and Kingman & Co. v. Hanna Wagon Co., 176 Ill. 545, 52 N.E. 328.

We, therefore, do not agree with the trial court's construction of the contract of April 29, 1946 here involved. Under its terms Arnolt was not obligated to deliver in installments of 5,000 in June and July; 3,000 in August and 2,000 in September. Its obligation was to ship as directed by Stansen.

Kawin & Co. v. American Colortype Co., 7 Cir., 243 F. 317, involved a contract for the sale of five million dollars worth of Christmas and New Year cards. It provided that the goods be delivered as ordered, all to be taken by December 15. This court held that the contract did not require or contemplate that the seller should, without order from the buyer, tender the entire quantity on or before December 15.

In Williston on Sales (Rev. ed. 1948) Vol. 2, sec. 457, it is said: "Where the buyer has by the terms of the contract an option as to the time or place for receiving the seller's performance, it is a condition qualifying the seller's obligation

that the buyer shall have given shipping directions or other notice of his choice. * * * "

In our discussion we have heretofore pointed out that Stansen issued only two shipping directions to Arnolt during the month of June 1946, and that those shipments were made as directed and paid for by Stansen. All this is established by documentary exhibits.

█ It is elementary that the purchaser in a contract of sale cannot recoup damages for a breach by the seller unless he has performed his part of the contract or is ready, able and willing to do so at the required time. Purcell Co. v. Sage et al., 200 Ill. 342–347, 65 N.E. 723; Hess Co. v. Dawson et al., 149 Ill. 138, 36 N.E. 557.

Stansen, through documentary evidence, produced by itself and offered on its behalf clearly demonstrated that it did not have on hand orders sufficient to enable it to direct Arnolt to make shipments in the amounts mentioned in the purchase order of April 29, 1946.

In its Exhibit 13, Stansen produced 94 documents which purported to be orders received by it from January 1, 1946, up to and through November 1946. The majority of such orders contain written notations showing acceptance or other notations showing shipments or dates for shipments; some have invoices attached containing various memoranda. We have examined all of these documents from January 1, 1946 to September 1, 1946. They establish convincingly that Stansen did not in June 1946, or in any other month, have orders for 5,000 sprinklers.

The exhibit, defendant's 13, shows that in the months of January and February, 1946, Stansen received seven orders for a total of 1697 sprinklers. Two of these so-called orders, one from Mississippi Wholesale Furniture Company, of Jackson, Miss., contains no notation of any kind— this is for 200 units, the second from the Lone Star Wholesaler, of Dallas, Texas, for 400 units, is also without notation of acceptance or of any other sort. Hence its own exhibit shows that on March 1, 1946, Stansen had orders for only 1097 sprinklers.

During March 1946, the exhibit shows 11 purported orders calling for 4385 sprinklers. Two of these, the first from Elliott and Evans, Inc., of Cleveland, Ohio, calling for 500 units, and the second from Supplee-Biddle Co., of Philadelphia, Pa., calling for 1500 units, contain no notation of acceptance or other memoranda. Hence Stansen had orders for only 2385 additional units received in March. In this connection it must be remembered that Moulton Machine Shop, of South Bend, Indiana, its primary manufacturer, began making deliveries in February 1946. Even if we disregard any deliveries by Moulton during February and March 1946, it is apparent that Stansen had, at the end of March orders for only 3482.

All orders included in the exhibit for April 1946, appear to have been accepted— they total 2425. Moulton, of course, continued to manufacture and deliver.

For May 1946, 22 orders are produced totalling 2396 units; 5 orders comprising 149 units have no notation of acceptance, leaving only 2247 units for shipment.

Hence it appears from documentary evidence submitted by Stansen itself that from March 1 to May 31, 1946, it has shown orders for only 1097 units in January and February; 2385 in March; 2425 in April, and 2247 in May, 1946. This totals 8154 sprinklers shown to have been ordered up to May 31, 1946. A notation attached to the last order filed in May is an invoice from Moulton Machine Shop, stating this brings total shipments up to 6034, so that on June 1, 1946 Stansen had orders for approximately 2100 units to be shipped. During June, 10 orders calling for 1682 are shown to have been accepted by the exhibit. In June, Moulton Machine Shop delivered, according to a notation attached to its invoice of June 27, 1946, a total of 2716 sprinklers, leaving 1066 sprinklers for July delivery. In July, the exhibit shows 11 orders for 1577 received, one for 18 units appear to be unaccepted. At most, therefore, there were available for July delivery only some 2625 orders for sprinklers.

In July, Moulton shipped 1700 units according to defendant's oral evidence, Arnolt shipped, as shown by its Exhibit 19, a total of 1470 units. Thus, during July there were shipped 3170 units, completely exhausting the orders on hand. The excess of units shipped over orders on hand is partly explained by Arnolt's Exhibit 19, which shows a shipment to Flamingo Travelawn Company for 100 units, for which there is no order in Stansen's Exhibit 13. There is also oral testimony by Sturm to the effect that small orders for one or two units are not included in Exhibit 13. In its reply brief, Stansen claims that further shipments to Robert F. Clark Company for 21 units, and to Hales-Mullay & Company for 10 units are not included in its Exhibit 13. The fact is that orders do appear from both these customers—that from Robert F. Clark, dated May 14, 1946, for 250, with no notation of shipments attached, and that from Hales-Mullay Company, dated April 26, 1946, for 500 units with a notation showing acceptance, dated May 29, but no notation showing shipments. At any rate, our examination of Stansen's Exhibit 13 has convinced us that it never was in a position during June or July, 1946 to direct shipments by Arnolt in the quantities required by its contract of April 29, 1946.

We have already pointed out that in August, 1946, Stansen directed the shipment of only 11 sprinklers by Arnolt. Its Exhibit 13 shows that its total orders for that month amounted to only 687 sprinklers. It had contracted to purchase and direct shipment of 3,000 by Arnolt. Instead it ordered production stopped because it had no orders.

In September 1946, it was under the terms of its contract obligated to purchase and direct shipment of 2,000 units. Its orders, for that and the succeeding months through November 1946, totalled only 544 units.

When the trial court held that Stansen had failed to sustain the burden of proof on its counterclaim, it was stating only one of many reasons why Stansen has no right of recovery on its counterclaim for breach of the contract of April 29, 1946. From its own exhibits it is demonstrated that it never was in position to discharge its own obligations under that contract. Its claim for $3,000 damages for breach of contract in the sale of the sprinkler parts, we will now consider in connection with the appeal in cause No. 10277.

In its appeal No. 10277, Arnolt as plaintiff and appellant, seeks a judgment for $12,341.37 instead of the $674.05 judgment awarded to it in the trial court. On the other hand Stansen, defendant and appellee, asserts a counterclaim in the sum of $3,000 because it charges Arnolt failed to deliver the sprinkler parts on its order. Both parties admit that the trial court was clearly in error when it found as a fact that Stansen owed Arnolt $674.05 for completed sprinklers delivered to it or pursuant to its order. No completed sprinklers are involved in this appeal.

Arnolt's claim arises from the fact that when Stansen in August 1946 issued its stop production order, Arnolt had on hand sprinkler parts to the value of $19,419.08, at cost prices. It alleges that, at the request and direction of Stansen, it set these parts aside for Stansen's account and agreed to send it an inventory thereof. It is charged that this arrangement was made at the same time as arrangements were completed to take care of completed assembled sprinklers through the loan afterwards negotiated with Walter E. Heller Company, and through the sale of some sprinklers to plaintiff's Mexican affiliate.

Arnolt's contention is born out by defendant's Exhibit 2 produced by Stansen, which is a letter referring to the Heller Company loan, dated September 4, 1946, and addressed to Arnolt. It states: "we are to bill you with 500 sprinklers for your Mexican company, and you are to credit our parts account with the difference between our costs and the billing price on these 500 units."

There is also in evidence as plaintiff's Exhibit 4 an inventory of sprinkler parts dated October 16, 1946, and totalling $19,-

419.08, a copy of which was sent to Stansen.

Stansen, on the other hand, claims that it contracted to purchase inventory parts on April 29, 1947, that the sale was on 10 days' credit, that it requested shipment on July 31, 1947, and again on August 7, 1947, that shipment was refused except on a C. O. D. basis, and that in consequence thereof it lost $3,000 profit which it would have made from the sale of sprinklers assembled from these parts.

Stansen's own ledger account with Arnolt in evidence as defendant's Exhibit 1, shows that from September 1, 1946, it was crediting Arnolt with the value of parts which it directed to be shipped to Moulton. Such credits extend to May 17, 1947. Moreover, as shown by plaintiff's Exhibits 12 and 12a, Arnolt on May 2, 1947, billed Stansen for Travelawn inventory, as per attached list, in the sum of $11,667.32. The attached list is an inventory of sprinkler parts dated April 29, 1947, and amounting to $11,667.32.

Also in evidence as plaintiff's exhibits are letters dated July 1, 1947 and July 16, 1947, requesting payment of plaintiff's past due account. Neither of the letters was answered by Stansen.

In addition to this documentary evidence, Stansen itself put in evidence that in 1947 they were asking for additional time. They had a plan of reorganization, they wanted to give their creditors notes payable over a period of five years, that their president was sure that if these notes were accepted he could raise money and continue operations.

Knowledge of this state of affairs was actually communicated to Arnolt on August 7, 1947 by Stansen itself. Arnolt refused to cooperate and insisted that the $12,000 odd dollars due them be paid at once.

The Uniform Sales Act has been enacted in both Illinois, where this suit was tried, and in Indiana of which Arnolt is a resident. Section 54 of that Act, Ill.Rev. Stat. Chap. 121½; Burns Ind.Stat.1933, Sec. 58–403, provides:

"Subject to the provisions of this act, the unpaid seller of goods who is in possession of them is entitled to retain possession of them until payment or tender of the price in the following cases, namely * * *.

"(c) Where the buyer becomes insolvent."

■ This section of the Act in our opinion gives Arnolt a complete defense to the counterclaim for its refusal to deliver any of the parts on credit.

■ From a consideration of all the evidence, documentary and oral, we are convinced that in late August 1946, Arnolt sold to Stansen the sprinkler parts, then in its possession, valued at $19,419.08; that thereafter at the direction of Stansen and at its request it shipped some of these parts to Moulton; that on August 1, 1947, there was due from Stansen to Arnolt not only the sum of $674.05 for parts actually shipped to Moulton, but also the sum of $11,667.32 for parts still held by Arnolt according to Stansen's own figures.

Stansen's own ledger account, in evidence as its Exhibit No. 1, shows that it was delinquent on its parts account with Arnolt in May 1947, and that it has remained delinquent even since. Consequently it was in no position to demand delivery of the remaining parts in July or August of 1947 and to claim damages for Arnolt's refusal to deliver on such demand.

In appeal No. 10276, the order of the District Court of July 21, 1950, entering judgment in favor of Arnolt on Stansen's counterclaim, is affirmed.

In appeal No. 10277, the order of July 21, 1950, entering judgment in favor of Arnolt for $674.05, plus interest and costs, is reversed and the cause remanded with directions to enter judgment for $12,341.37 in favor of Arnolt and against Stansen.