**O'BRIEN v. UNITED STATES.**

No. 14359.

United States Court of Appeals
Eighth Circuit.

Dec. 27, 1951.

Richard J. Leonard, St. Paul, Minn. (D. B. Rumble, St. Paul, Minn., on the brief; Doherty, Rumble, Butler & Mitchell, St. Paul, Minn., of counsel), for appellant.

Miles W. Lord, Asst. U. S. Atty., St. Paul, Minn. (C. U. Landrum, U. S. Atty. and William P. Murphy, Asst. U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Plaintiff (Appellant), as special administrator of the estate of his minor son, Mark James O'Brien, brought this action under the Tort Claims Act, 28 U.S.C.A. § 2671, et seq., against the United States to recover damages for the death of his son caused by the alleged negligence of a United States Navy pilot. A jury was waived and the cause was tried by the court. The trial court found that the deceased was at the time of his fatal injury a member of the Organized Reserve of the United States Naval Reserve and suffered the injury "while acting in line of duty as a member of the U. S. Naval Reserve." Upon that finding the court dismissed the complaint and entered judgment for the defendant on the ground that under the Tort Claims Act the Government is not liable for injuries to servicemen where the injuries arise out of or are suffered in the course of activity incident to military service, upon the authority of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 155, 95 L.Ed. 152, and Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200. Reaching that conclusion, the trial court did not pass upon the charge of negligence.

This appeal is based upon two assignments of error, viz.: (1) that the finding that the deceased was a member of the Organized Reserve and as such was acting in line of duty is not supported by the evidence, and (2) that the court erred in receiving in evidence Defendant's Exhibit D-1, the application of deceased for transfer from the Voluntary Reserve to the Organized Reserve, and Defendant's Exhibit G, a certified copy of the deceased's personnel record.

If the court's finding was correct, the nonliability of the Government under

the Tort Claims Act is settled by the Brooks and Feres cases, supra. In the former case the plaintiffs were in the military service but on furlough and were not acting in line of duty or engaged in an activity incident to their military duty at the time of their injuries, which resulted from the negligent operation of a U. S. Army truck by a civilian employee of the Army. The Supreme Court held that the action was properly brought under the Tort Claims Act because the accident had nothing to do with plaintiffs' military duties and the injuries were not incident to their military service, specifically reserving decision in cases where the claimant was injured in line of duty or when the injury was an incident to military service. In the Feres case [340 U.S. 135, 71 S.Ct. 159] (which involved two companion cases) the plaintiffs were in military service on active duty and sought to maintain actions under the Tort Claims Act for injuries resulting from alleged negligent acts of representatives of the Government in the performance of their duties as such representatives. The court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." The controlling importance of the trial court's finding that deceased was acting in line of duty at the time of his fatal injury is obvious.

■ Appellant directs attention to the rule that the trial court's determination of the facts is not always conclusive. United States v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; State Farm Mutual Automobile Insurance Co. v. Bonacci, 8 Cir., 111 F.2d 412; Aetna Life Insurance Co. v. Kepler, 8 Cir., 116 F.2d 1; and Arnolt Corp. v. Stansen Corp., 7 Cir., 189 F.2d 5. But unless the trial court's findings are clearly erroneous they shall not be set aside. Rules of Civil Procedure 52(a), 28 U.S.C.A., Aetna Life Insurance v. Kepler, supra.

■ Appellant's assignment of error relating to the admission in evidence of the application for transfer to the Organized Reserve and the certified copy of the deceased's personnel record must be overruled. Both of these exhibits were records kept by an agency of the United States in the usual course of business and were admissible as such. Title 28 U.S.C.A. § 1733. Only the weight of the records as evidence is left for determination by the court.

■ The basic facts upon which the trial court based its finding follow. On the morning of June 6, 1947, the deceased, Mark James O'Brien, went with an acquaintance, Lt. Solberg, to the U. S. Naval Air Station at Wold-Chamberlain Field near Minneapolis, Minnesota, arriving at the Field at approximately 7:55 a. m. Mr. O'Brien had with him an application for enlistment in the V-6 inactive Naval Reserve, also referred to as the Voluntary Reserve. He also had the necessary written character recommendations. Lt. Solberg left O'Brien at the office of the personnel officer, Mr. Dutcher. Mr. Dutcher had no independent recollection of young O'Brien but identified a copy of the latter's signed "Shipping Orders", or record of induction. The signing of the shipping orders completed induction into the V-6 inactive reserve. All members of the Organized Reserve were required to be initially inducted into the inactive reserve. If they remained in the inactive reserve they would have no duties whatever to perform and would be called upon to report only in an emergency and would retain civilian status until that time or until called for training. An identification card was issued to all in the V-6 inactive reserve. If a newly enlisted inactive reservist desired to join the Organized Reserve, it was necessary that there be a billet available in a squadron and that he make application to be transferred to that station and billet through the Type Training Department as set out in the Bureau of Personnel Manual. A portion of that manual received in evidence is as follows:

"Sec. H4106. Commandants of Naval Districts, River Commands and Chief of Naval Air Reserve Training are authorized to transfer enlisted personnel of the Naval

Reserve from one class to another for which qualified, subject to the following restrictions:

"(a) Transfers to classes O-1 and O-2 shall only be made to fill vacancy in organized quotas.

"(b) Transfers to classes V-1 and V-2 shall only be made within prescribed quotas."

The Assistant Flight Officer at the Naval Air Station testified that he, under the supervision of the Flight Officer, had the responsibility of handling the transferring of men into the Organized Reserve from the V-6. The routine was described by him as follows: "His office kept track of the billets that were available in the squadrons, and if a man came from V-6 with the proper V-6 card and was eligible for O-2 [Organized Reserve], a yeoman would take care of the paper work and fill out the necessary papers. The man signed his own request, and his office was responsible for transferring him to the O-2 section. Only the officers in the air group had the authority to transfer a man from the V-6 program to the organized reserve. [Lieutenant] Commander Kieling [the Flight Officer], would sign the man up and the squadron commander actually had to approve the man before he could be taken into the active reserve. Lieutenant Solberg had no authority to make an actual transfer. It was his responsibility merely to sign the papers for the actual transfer. If a man wanted to transfer from V-6 to O-2 he would come into the office and request assignment to a certain squadron and if there was a billet available the papers would be filled out and signed. A specific form was prepared for the signature of the man who requested the transfer. After the necessary form was signed it would be transferred to the commanding officer or to the squadron to which he was seeking admission. Lieutenant [Commander] L. L. Johnson was commander of one of the squadrons under Lieutenant Commander Kieling, and it was Lieutenant [Commander] Johnson to whom request for transfer would be forwarded."

There was also testimony that the approval of the commanding officers on the Naval Air Station was effective to transfer a man from the inactive reserve to the Organized Reserve and that the approval of the officers mentioned in the manual was only a formality.

When transferred to the Organized Reserve the reservist retains his civilian status but reports for duty at specific times once or twice a month and participates in a naval cruise for a two weeks period in the course of a year. A newly enlisted man in the Organized Reserve was classified as an apprentice seaman and could be assigned maintenance duties, taken on a tour around the station, or a flight if the man so desired. Such a flight was treated as a part of his indoctrination.

Later in the morning of June 6, after O'Brien left the office of the personnel officer, Mr. Dutcher, O'Brien appeared at Lt. Solberg's office in the Type Training Department with his V-6 identification card and filled out and signed the necessary papers for transfer from V-6 to the Organized Reserve, designated as "O-2". Mr. Solberg forwarded the request for transfer to Lieutenant Commander Johnson, who was commanding officer of one air squadron and acting commanding officer of the air group at the station consisting of two squadrons, by placing it on Johnson's desk. Mr. Johnson identified the application for transfer to the Organized Reserve. Below the signature of Mark James O'Brien there were the following notations on the application:

"End-1
6-6-47
(Date)
From: Commanding Officer, Squadron VF64E
To: Commanding Officer, U.S. Naval Air Station,
Mpls, Minn.
1. Forwarded, recommending approval.
(Signed) L. L. Johnson
L.L. Johnson, LCDR, USNR

End-2 NAS Mpls., Minn. U.S.N.A.S.
Minneapolis, Minnesota.
6-6-47
(Date)

From: Commanding Officer, U.S. Naval
Air Station,
Minneapolis, Minn.

To:   O'Brien Mark James, 993 32 91 AS
02, (Inactive), USNR.

1. Approved.

2. You are ordered to report to the Commanding Officer, Squadron VF 64E for duty with the Organized Reserve.

c:            (Signed) W. B. Whaley
CNAResTra    W. B. Whaley
COM-9        Commanding Officer

---

6-6-47 : Reported this date for active duty at ~~1200~~ 0800 in the Organized Reserve, Squadron VF64E

(Signed) L. L. Johnson
L. L. Johnson, LCDR, USNR
Commanding Officer,"

Mr. Johnson further identified Mr. O'Brien's service record on which it was recorded over Johnson's signature that O'Brien's classification was changed June 6, 1947, from V-6 to O2 USNR and that he reported for duty with Organized Reserve Squadron on June 6, 1947. Mr. Johnson testified that he considered O'Brien a member of his squadron and consequently a member of the Organized Reserve on the morning of June 6.

Young O'Brien met his friend Lt. Tack, a pilot, at 8:30 a. m. and asked him for a ride in a plane that morning. Tack assisted O'Brien in making out a request for the latter to accompany Tack on a flight as a passenger and Tack took the request to the proper officer and got it approved. Lt. Tack then took Mr. O'Brien to a plane, instructed him about the use of equipment in the plane and after both had entered it, the plane was taxied to a take-off position on the field where it was held awaiting the landing of a group of fighter planes. The last of that group to land swerved from the runway and crashed into the plane occupied by Tack and O'Brien, fatally injuring O'Brien and seriously injuring Tack. The accident occurred at 10 a. m.

Upon these facts the finding was not clearly erroneous and must stand. The judgment must therefore be affirmed. It is so ordered.