**Ardell LEE et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 66–1052.

United States District Court
C. D. California.

Dec. 15, 1966.

Samuel N. Hecsh, San Diego, Cal., Kreindler & Kreindler, New York City, for plaintiffs.

Manuel L. Real, U. S. Atty., by James D. Murray, Asst. U. S. Atty., Los Angeles, Cal., Phil Silverman, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM P. GRAY, District Judge.

Two enlisted men of the United States Marine Corps, on active duty, were in process of being transferred to Viet Nam, and for that purpose they were placed on board an airplane operated by the Military Air Transport Service, United States Air Force. In the course of taking off from the El Toro Marine Corps Air Station, California, to begin the overseas flight, the airplane crashed, and the two servicemen, along with many other people, were killed. Their personal representatives bring this action under the Federal Tort Claims Act, 28 U.S.C. sections 1346(b) and 2671 et seq. The complaint makes no charge against the Marine Corps or against MATS; it alleges, instead, that the crash was caused by the negligence of the Federal Aviation Agency in operating, maintaining and controlling the departure of the aircraft from the ground and in giving inadequate terrain clearance information.

The Government has moved to dismiss the action on the ground that, as a matter of law, the facts here concerned preclude recovery under the Tort Claims Act. The issue thus raised has been briefed by both sides, argued orally and submitted to the Court for decision.

The position of the Government is well summarized by the following sentence from Justice Jackson's opinion in Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950):

"We conclude that the Government is not liable under the Federal Tort

Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

If this is a correct statement of the law, the case at hand must be dismissed, because the deaths of the two servicemen clearly were in the course of activity incident to their service with the Marine Corps.

However, for reasons hereinafter set forth, it is my conclusion that the above quoted sentence is no longer authoritative, that under present law these plaintiffs are not precluded from seeking relief under the Federal Tort Claims Act, and that the motion to dismiss must therefore be denied.

The terms of the statute, itself, give no indication that servicemen injured under the circumstances here concerned are to be deprived of the benefits of the Act. On the contrary, the fact that section 2680 specifically excludes "Any claim arising out of the combatant activities of the military or naval forces * * * during time of war" and "Any claim arising in a foreign country,' would seem to indicate an intention to permit servicemen to assert claims arising in this country and not related to combatant activities. In this respect, the same conclusion was asserted by Justice Murphy, in speaking for the Court in Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). He pointed out that the Tort Claims Act, with the exceptions therein specified, provides for District Court jurisdiction over any claim for personal injury or death founded upon negligence, and he expressed disbelief that " 'any claim' means 'any claim but that of servicemen' ". He also said that "It would be absurd to believe that Congress did not have the servicemen in mind in 1946, when this statute was passed. The overseas and combatant activities exceptions make this plain." (Page 51, 69 S.Ct. page 919.)

In *Brooks*, two servicemen were riding in their automobile with their father along a public highway in North Carolina. They were doing so for their own purposes and presumably were on pass or furlough. One was injured and the other was killed when their car was struck by a United States Army truck. The Supreme Court held that the plaintiffs' action under the Tort Claims Act had been well founded.

In the course of his opinion in *Brooks*, Justice Murphy acknowledged that to adhere to the literal language of the statute and allow recovery to servicemen irrespective of how their injuries related to military service, might bring about outlandish results that Congress clearly would not have intended. "A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, * * *" occurred to the Court as examples in which the allowance of recovery would be incongruous. However, the opinion emphasized that the accident to the Brooks brothers had nothing to do with their military careers, and it asserted that the Court withheld comment as to a case involving an accident incident to such service.

Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) was just such a case; actually there were three combined cases. In one, a soldier was quartered in barracks that should have been known to be unsafe because of a defective heating plant, and he died in the ensuing fire. The other two cases involved negligence by army surgeons in the course of medical operations upon servicemen. In each of the three instances recovery was sought under the Federal Tort Claims Act and the Supreme Court denied relief.

Justice Jackson wrote the opinion of the Court. He noted at the outset that the three cases had in common the fact that " * * * each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." (Page 138, 71 S. Ct. page 155.)

It is to be noted that the first of these quoted circumstances distinguishes the *Feres* case from *Brooks,* and the second distinguishes *Feres* from the case at

hand. However, throughout the balance of his opinion, Justice Jackson ignored the latter aspect of the factual proposition that he had expressed, and he considered the only question to be whether the Tort Claims Act extends its remedy to any serviceman who receives injury incident to his military service. He answered this question in the negative, and we now consider the reasons given for such conclusion and how they have survived subsequent examination by the Supreme Court.

1. The opinion in *Feres* reasoned that the primary purpose of the Tort Claims Act was to provide a remedy to those who had been without, as reflected in the large number of private bills that had stemmed from torts suffered at the hands of Government employees; that there had been no large number of private bills on behalf of military personnel, because they and their dependents had already been given a comprehensive system of relief; and that it therefore followed that Congress had not intended to benefit servicemen in the passage of the Tort Claims Act. Similarly, it was suggested that Congress presumably would not have intended to permit servicemen to have double recovery, and that therefore the failure of the Tort Claims Act to provide for adjustment between the relief therein granted and the military disability and death benefit system, indicated that the latter is to be the exclusive remedy.

This argument was specifically rejected four years later in United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). There, a veteran had received a service connected injury to his knee, for which he was receiving compensation. The need for a further operation arose, and in the course of performing such operation the doctor in the Veterans Administration hospital negligently caused serious further and permanent damage to the patient's leg. The Supreme Court held that recovery under the Tort Claims Act should be allowed. The opinion referred to the decision in *Brooks* as having concluded " * * * that Congress had given no indication

that it made the right to compensation the veteran's exclusive remedy, that the receipt of disability payments under the Veterans Act was not an election of remedies and did not preclude recovery under the Tort Claims Act but only reduced the amount of any judgment under the latter Act." The next sentence stated: "We adhere to that result." (Page 113, 75 S.Ct. page 144.)

Likewise, in United States v. Muniz, 374 U.S. 150, 160, 83 S.Ct. 1850, 1856, 10 L.Ed.2d 805 (1963), Chief Justice Warren, in speaking for the Court said that " * * * the presence of a compensation system, persuasive in *Feres*, does not of necessity preclude a suit for negligence" under the Tort Claims Act. Cf. United States v. Demko, 87 S.Ct. 382 (U.S. Dec. 5, 1966).

2. Another argument that was persuasive in *Feres* was that the Tort Claims Act (in section 2674) provides that "The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances * * *." The opinion reasoned that since private individuals do not maintain military establishments and therefore are not subjected to claims even remotely analogous to those at issue, the statute precluded recovery for the latter claims.

This argument was specifically rejected in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), which allowed recovery for damages resulting from the grounding of a tug due to the negligence of the Coast Guard in the operation of a lighthouse. Justice Reed dissented on the ground that the majority decision had rejected the doctrine of the *Feres* case.

3. Justice Jackson, in *Feres*, also considered it significant that the Tort Claims Act " * * * makes '. . . the law of the place where the act or omission occurred' govern any consequent liability." (340 U.S. at 142, 71 S.Ct. at 157.) He then reasoned that it would not be rational to cause recovery by a serviceman to be governed by the laws of the place where the injuries occurred,

inasmuch as he has no control over where his military duties might take him.

Inmates of federal penitentiaries, likewise, have a considerable lack of discretion with respect to the states in which they dwell. But this did not prevent the Court from holding that two such prisoners might recover under the Act for injuries that they sustained due to the negligence of supervisory personnel. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). In the course of his opinion for the Court, Chief Justice Warren adverted to the *Feres* reasoning that is summarized in the preceding paragraph. He thereupon rejected it, concluding with the comment that although the nonuniform right to recover because of varying state laws might possibly prejudice some prisoners, " * * * it nonetheless seems clear that no recovery would prejudice them even more." (Page 162, 83 S.Ct. at 1857.)

Although the opinion in *Muniz* expressly stated that the Court found no occasion to question *Feres*, so far as military claims were concerned, it proceeded to discredit or express lack of enthusiasm for each of the reasons upon which the doctrine of that case was founded. Chief Justice Warren concluded his discussion of *Feres* as follows:

> "In the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty * * *.' United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143 [99 L.Ed. 139]." (374 U.S. at 162, 83 S.Ct. at 1858.

█ Thus, we have an explanation of *Feres* that provides the only authoritative and satisfactory basis for the decision that I have been able to find. It would follow therefrom that the exclusion of military personnel from recourse to the Act would not depend upon whether they were on active duty or on leave at the time of their injuries. Instead, it would depend upon whether or not the injuries stemmed from activities that involved an official military relationship between the negligent person and the claimant. If so, the claimant would be precluded; otherwise, he would not. That relationship did exist in *Feres*, and recovery was not allowed. The same was true in Archer v. United States, 217 F. 2d 548 (9th Cir. 1954), cert. denied 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955), in O'Brien v. United States, 192 F.2d 948 (8th Cir. 1951), and in Van Sickel v. United States, 285 F.2d 87 (9th Cir. 1960). Such relationship was not present in *Brooks* or in *Brown*, in which the claimants prevailed. Thus, all of the decided cases are in harmony with this test, with the following exception.

Callaway v. Garber, 289 F.2d 171 (9th Cir. 1961) involved a situation in which three Air Force sergeants were under orders directing them to go from South Dakota to Seattle, Washington to attend a special service school. They properly chose to make the trip together by private automobile, and while doing so their car was struck by another automobile driven by a recruiting officer of the United States Navy while on official business. One of the three sergeants was killed, and his next of kin brought suit under the Tort Claims Act. The Court of Appeals affirmed the denial of recovery. The opinion, by Judge Orr, set out the hereinabove quoted "explanation" of the *Feres* decision and very aptly observed that those reasons had no relevance to the case at hand, since the official activities of the negligent party and those of the injured parties were entirely unrelated. The opinion then concluded by stating:

> "However, the instant case does fall within the rule of the Feres case as promulgated, and we must adhere to said rule since it was in no way negated or modified by the later Brown case." (Page 174.)

It seems to me that the negation of the *Feres* rule, for which Judge Orr some-

what wistfully was looking, has been provided by the later *Muniz* decision.

In the present case the two servicemen were killed in the course of their official relationships with the Marine Corps and with MATS. But the Federal Aviation Agency, whose alleged conduct is the only target of this action, is not a part of the military. It is an administrative agency created by Congress and given the responsibility of establishing and operating air navigation facilities and procedures for efficient air safety and traffic control. 49 U.S.C. section 1341 et seq. Such responsibility extends to all airports, civil as well as military. As far as the FAA was concerned, the decedents simply were two passengers in an airplane, just as in *Brooks* the two claimants were in the same position as any other motorist on the highway. Applying the test that I have derived from the hereinabove quoted "explanation" of the *Feres* decision, it follows that recovery by the present plaintiffs under the Tort Claims Act may not be foreclosed to them if they can prove the negligence that they allege.

The defendant's motion to dismiss the action is denied, and the defendant is given twenty days within which to answer the complaint.